USDC SCAN INDEX SHEET

CAG 8/2/00 15:38

3:00-CV-01545 KINGRAY, INC. V. NATIONAL BASKETBALL

*1*

*CMP.*

JOHN F. MCGUIRE, JR., ESQ. SB#69176
PALMA CESAR HOOPER, ESQ. SB#93353
DARAL B. MAZZARELLA, ESQ. SB#126864
KAREN R. FROSTROM, ESQ. SB#207044
THORSNES BARTOLOTTA & McGUIRE
2550 Fifth Avenue, Suite 1100
San Diego, CA 92103
Telephone: (619) 236-9363; Fax: (619) 236-9653

MARK A. HOVENKAMP, ESQ. (Pro Hac Vice)
GRAYSON, HOVENKAMP & PETROSKI, P.L.L.C.
1221 McKinney, Suite 3850
Houston, TX 77010
Telephone: (713) 650-3200; Fax: (713) 650-0251

Attorneys for Plaintiffs

[Additional counsel appear on signature page]

FILED
00 AUG -1 PM 3:59
DEPUTY

ORIGINAL

THORSNES BARTOLOTTA & McGUIRE
2550 FIFTH AVENUE ELEVENTH FLOOR
SAN DIEGO, CALIFORNIA 92103
(619) 236-9363 FAX (619) 236-9653

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF THE STATE OF CALIFORNIA

KINGRAY, INC. d/b/a THE BEER HUNTER, a California corporation; DANRAY, INC. d/b/a THE BEER HUNTER, a South Dakota corporation; RAYBAN, INC. d/b/a THE BEER HUNTER, a South Dakota corporation; and BOBRAY RESTAURANTS, INC. d/b/a THE BEER HUNTER, a California corporation; GARRETT CRAYTON, an individual; JILL MILLER, an individual;

Plaintiffs,

vs.

NATIONAL BASKETBALL ASSOCIATION, INC., a New York corporation; NBA PROPERTIES, INC., a New York corporation; CBLS CORPORATION d/b/a CHICAGO BULLS, an Illinois corporation; LAC BASKETBALL CLUB, INC. d/b/a LOS ANGELES CLIPPERS, a California corporation; ROYAL KINGS LIMITED PARTNERSHIP d/b/a SACRAMENTO KINGS, a California limited partnership; NEW YORK KNICKERBOCKERS, INC. d/b/a/ NEW YORK KNICKS, a New York corporation; THE LOS ANGELES LAKERS, INC. d/b/a/ LOS ANGELES LAKERS, a California corporation; JAZZ BASKETBALL INVESTORS, INC. d/b/a THE UTAH JAZZ, a Utah corporation; TRAIL BLAZERS, INC. d/b/a PORTLAND TRAILBLAZERS, an

CASE NO.

'00 CV 1545 JM (LAB)

**CLASS ACTION**
**COMPLAINT FOR VIOLATIONS OF THE SHERMAN ACT, CLAYTON ACT, AND CALIFORNIA BUSINESS & PROFESSIONS CODE AND DEMAND FOR JURY TRIAL**

Oregon corporation; and DIRECTV, INC., a California corporation; )
)
)
Defendants. )
)

Plaintiffs, individually and on behalf of the members of the classes described below, bring this antitrust class action for damages and declaratory and injunctive relief under the antitrust laws of the United States and the State of California and under the unfair competition laws of the State of California against the above-named Defendants. The allegations pertaining to Plaintiffs and their purchase of the "NBA League Pass" are made upon personal knowledge. The remaining allegations in this Complaint are made on information and belief based upon investigations conducted by Plaintiffs' counsel. Plaintiffs allege as follows:

## I.

## INTRODUCTION

1. This lawsuit seeks to remedy a continuing contract, conspiracy, and agreement in restraint of trade and commerce in violation of Section 1 of the Sherman Act and also seeks to remedy conduct by Defendant co-conspirators, which by constraining market forces, has resulted in the creation of a monopoly in violation of Section 2 the Sherman Act. Such conduct is also in violation of the California Cartwright Act and California's Unfair Competition Laws. Defendant basketball league, Defendants professional basketball teams, Defendant pay television provider, and others have conspired to sell the "NBA League Pass," an exclusive sports package described in more detail below, to consumers for a fixed fee and have restricted output of live video broadcasts of NBA games in non-exempt channels of distribution.

## II.

## THE PARTIES

2. Plaintiff Kingray, Inc. d/b/a The Beer Hunter is a commercial entity doing business in Riverside County, California, which purchased the NBA League Pass in the State of California and the United States of America during the Class Period for the enjoyment of its patrons.

THORSNES BARTOLOTTA & McGUIRE
2550 FIFTH AVENUE ELEVENTH FLOOR
SAN DIEGO, CALIFORNIA 92103
(619) 236-9363 FAX (619) 236-9653

3. Plaintiff Danray, Inc. d/b/a The Beer Hunter is a commercial entity doing business in Riverside County, California, which purchased the NBA League Pass in the State of California and the United States of America during the Class Period for the enjoyment of its patrons.

4. Plaintiff Rayban, Inc. d/b/a The Beer Hunter is a commercial entity doing business in Riverside County, California, which purchased the NBA League Pass in the State of California and the United States of America during the Class Period for the enjoyment of its patrons.

5. Plaintiff Bobray Restaurants, Inc. d/b/a The Beer Hunter is a commercial entity doing business in Riverside County, California, which purchased the NBA League Pass in the State of California and the United States of America during the Class Period for the enjoyment of its patrons.

6. Plaintiffs Garrett Crayton and Jill Miller, husband and wife, are individuals and residents of Imperial County, California, who purchased the NBA League Pass within the State of California and the United States of America during the Class Period.

7. Defendant National Basketball Association, Inc. (hereinafter "NBA") is a New York corporation with its principal place of business at 645 5th Avenue #10, New York, New York.

8. Defendant NBA Properties, Inc. is a corporation, maintaining its principal place of business at 645 Fifth Avenue, New York, New York.

9. Defendant CBLS Corporation d/b/a Chicago Bulls (hereinafter "Bulls") is a professional basketball organization and corporation, incorporated under the laws of the State of Illinois, with its principal place of business at 1901 West Madison Street, Chicago, Illinois 60612.

10. Defendant LAC Basketball Club, Inc. d/b/a Los Angeles Clippers (hereinafter "Clippers") is a professional basketball organization and corporation, incorporated under the laws of the State of California, with its principal place of business at 3939 South Figueroa Street, Los Angeles, CA 90037.

THORSNES BARTOLOTTA & McGUIRE
2550 FIFTH AVENUE ELEVENTH FLOOR
SAN DIEGO, CALIFORNIA 92103
(619) 236-9363 FAX (619) 236-9653

11. Defendant Royal Kings Limited Partnership d/b/a Sacramento Kings (hereinafter "Kings") is a professional basketball organization and limited partnership, registered under the laws of the State of California, with its principal place of business at 2613 Arbury Court, Sacramento, CA 95833.

12. Defendant New York Knickerbockers, Inc. d/b/a/ New York Knicks (hereinafter "Knicks") is a professional basketball organization and corporation, registered under the laws of the State of New York, with its principal place of business at Two Pennsylvania Plaza, New York, NY 10121.

13. Defendant The Los Angeles Lakers, Inc. d/b/a/ Los Angeles Lakers (hereinafter "Lakers") is a professional basketball organization and corporation, registered under the laws of the State of California, with its principal place of business at 3900 West Manchester Boulevard, Inglewood, CA 90305.

14. Defendant Jazz Basketball Investors, Inc. d/b/a The Utah Jazz (hereinafter "Jazz") is a professional basketball organization and corporation, registered under the laws of the State of Utah, with its principal place of business at 5650 South State Street, Murray, Utah 84107.

15. Defendant Trail Blazers, Inc. d/b/a Portland Trailblazers (hereinafter "Trailblazers") is a professional basketball organization and corporation, registered under the laws of the State of Oregon, with its principal place of business at One Center Court, Suite 200, Portland, Oregon 97227.

16. Defendant DirecTV, Inc. is a corporation, registered under the laws of California, with its principal place of business at 2330 East Imperial Highway, El Segundo, CA 90245.

17. The acts charged in this Complaint were authorized, directed, or executed by Defendants and their co-conspirators or their officers, agents, employees, or representatives while actively engaged in their course of business.

18. At all times relevant, Defendant DirecTV, Inc. acted as an agent of Defendants NBA and/or NBA Properties, Inc., and was authorized and/or controlled by those Defendants to sell residual live television rights held by the NBA and/or NBA Properties, Inc. as agents for the

THORSNES BARTOLOTTA & McGUIRE
2550 FIFTH AVENUE ELEVENTH FLOOR
SAN DIEGO, CALIFORNIA 92103
(619) 236-9363 FAX (619) 236-9653

individual professional basketball teams and owners of the NBA, including the rights to sell "NBA League Pass."

19. At all times relevant, Defendants NBA and/or NBA Properties, Inc. acted as an agent of the individual professional basketball teams and owners of the NBA and were authorized by said teams and owners to sell "NBA League Pass."

## III.

## CLASS ALLEGATIONS

20. Plaintiff Garrett Crayton ("Crayton") and Plaintiff Jill Miller ("Miller") each bring this action on their individual behalf and on behalf of all persons similarly situated. The class Plaintiffs Crayton and Miller represent is composed of all persons who purchased the "NBA League Pass" in a jurisdiction subject to the laws of the United States of America during the Class Period (hereinafter "Class A"). The persons in the class are so numerous that the joinder of all such persons is impracticable and the disposition of their claims in a class action will benefit the parties and the Court.

21. Plaintiffs Crayton and Miller each further bring this action on their individual behalf and on behalf of all persons similarly situated as a subclass. The subclass Plaintiffs represent is composed of all persons who purchased the "NBA League Pass" in a jurisdiction subject to the laws of the State of California during the Class Period (hereinafter "Class A'"). The persons in the class are so numerous that the joinder of all such persons is impracticable and the disposition of their claims in a class action will benefit the parties and the Court.

22. Plaintiffs Kingray, Inc. d/b/a The Beer Hunter; Danray, Inc. d/b/a The Beer Hunter; Rayban, Inc. d/b/a The Beer Hunter; and Bobray Restaurants, Inc. d/b/a The Beer Hunter (hereinafter collectively "The Beer Hunters"), each bring this action on their individual behalf and on behalf of all persons and entities similarly situated. The class The Beer Hunters represent is composed of all persons and entities which have purchased the commercial package of the "NBA League Pass" in a jurisdiction subject to the laws of the United States of America during the Class Period (hereinafter "Class B"). The persons and entities in the class are so numerous that the

THORSNES BARTOLOTTA & McGUIRE
2550 FIFTH AVENUE ELEVENTH FLOOR
SAN DIEGO, CALIFORNIA 92103
(619) 236-9363 FAX (619) 236-9653

joinder of all such entities is impracticable and the disposition of their claims in a class action will benefit the parties and the Court.

23. Plaintiffs Kingray, Inc. d/b/a The Beer Hunter; Danray, Inc. d/b/a The Beer Hunter; Rayban, Inc. d/b/a The Beer Hunter; and Bobray Restaurants, Inc. d/b/a The Beer Hunter each further bring this action on their individual behalf and on behalf of all persons and entities similarly situated as a subclass. The subclass The Beer Hunters represent is composed of all persons and entities which have purchased the commercial package of the "NBA League Pass" in a jurisdiction subject to the laws of the State of California during the Class Period (hereinafter "Class B'"). The persons and entities in the class are so numerous that the joinder of all such entities is impracticable and the disposition of their claims in a class action will benefit the parties and the Court.

24. There is a well-defined community of interest in the questions of law and fact affecting each of the named Classes, including but not limited to (a) whether Defendants and their co-conspirators engaged in a conspiracy to fix, raise, maintain, and/or stabilize the prices of "NBA League Pass" in the United States; (b) whether Defendants' conduct illegally restricted the output of live video broadcasts of NBA games in non-exempt channels of distribution; (c) whether Defendants' conduct caused the prices of "NBA League Pass" sold in the United States to be at artificially high and non-competitive levels; and (d) whether Plaintiff and other members of the class were injured by Defendants' conduct and, if so, whether damages and declaratory and injunctive relief is appropriate. These questions predominate over questions that affect only individual class members.

25. The claims of Plaintiffs Crayton and Miller are typical of those of Class A and Plaintiffs Crayton and Miller will fairly and adequately represent the interests of the class. The claims of Plaintiffs Crayton and Miller are also typical of those of Class A' and Plaintiffs Crayton and Miller will fairly and adequately represent the interests of the subclass.

26. The claims of The Beer Hunters are typical of those of Class B and those Plaintiffs will fairly and adequately represent the interests of the class. The claims of The Beer Hunters are

THORSNES BARTOLOTTA & McGUIRE
2550 FIFTH AVENUE ELEVENTH FLOOR
SAN DIEGO, CALIFORNIA 92103
(619) 236-9363 FAX (619) 236-9653

also typical of those of Class B[1] and those Plaintiffs will fairly and adequately represent the interests of the subclass.

27. The prosecution of individual remedies by members of the named Classes would tend to establish inconsistent standard of conduct for the Defendants and to result in the impairment of the class members' rights and the disposition of their interests through actions to which they were not parties. However, as Defendants have acted on grounds generally applicable to all classes, final injunctive relief and/or corresponding declaratory relief with respect to the classes are appropriate.

## IV.

## JURISDICTION AND VENUE

28. This Complaint was filed and these proceedings instituted under the Clayton Act for violations of the Sherman Act, 15 U.S.C. §§ 15 and 26, the Cartwright Act, Cal. Bus & Prof. Code § 16700, *et seq.*, and the Unfair Competition Act, Cal. Bus. & Prof. Code § 17204, to obtain damages and declaratory and injunctive relief against Defendants for the injuries Plaintiffs and class members sustained by reason of violations of the various state and federal laws.

29. Jurisdiction in this Court is proper under 28 U.S.C. §§ 1331, 1337, and 1367.

30. The conspiracy charged in this Complaint, either directly or through interstate commerce/trade was carried out, at least in part, in the Southern District of California. All named Defendants transact business and/or can be found doing business in this District. Certain of the unlawful, unfair, and/or fraudulent business practices alleged herein were performed or had effects in this judicial district. Venue is, therefore, proper under 28 U.S.C. § 1391, 15 U.S.C. § 22, and Cal. Bus. & Prof. Code § 16750(a).

## V.

## STATUTORY BACKGROUND

### A. Federal Antitrust Laws

31. The Sherman Act, 15 U.S.C. §§ 1-7, protects trade and commerce against unlawful restraints and monopolies. Section 1 prohibits contracts and conspiracies seeking to restrain trade.

THORSNES BARTOLOTTA & McGUIRE
2550 FIFTH AVENUE ELEVENTH FLOOR
SAN DIEGO, CALIFORNIA 92103
(619) 236-9363 FAX (619) 236-9653

Section 2 prohibits monopolies of trade and/or commerce and conspiracies to monopolize trade and/or commerce. Violations of the Sherman Act are remedied through the criminal justice system.

32. The Clayton Act, 15 U.S.C. §§ 12-27, provides for private enforcement of the provisions of the Sherman Act. Persons injured as a result of Sherman Act violations may receive treble damages and attorneys' fees. 15 U.S.C. § 15. Additionally, any "person, firm, corporation, or association" may seek an injunction concerning Sherman Act violations. 15 U.S.C. § 27.

33. Prior to the enactment of the Sports Broadcasting Act ("SBA"), collective agreements between professional sports leagues and broadcast television providers were found to be horizontal agreements in violation of the Sherman Act. *See United States v. National Football League*, 196 F. Supp. 445 (E.D. Pa. 1961). However, following the *National Football League* decision, the professional sports leagues successfully lobbied for the SBA, which carves out an exemption for a clearly delineated class of such agreements.

34. Under the SBA, 15 U.S.C. § 1291, the antitrust laws "shall not apply to any joint agreement [concerning] organized professional team sports of football, baseball, basketball, or hockey . . . in the sponsored telecasting of the games of football, baseball, basketball, or hockey." "Sponsored telecasting", as provided by the SBA, pertains only to broadcast television and does not apply to non-exempt channels of distribution such as cable television, pay-per-view, and satellite television networks.

**B. California Antitrust Laws**

35. California has chosen to provide state-level protection against unlawful restraints on trade for the benefit of its citizens via the Cartwright Act, Cal. Bus. & Prof. Code § 16700, *et seq.* The Cartwright Act, like the Sherman Act, prohibits agreements to, *inter alia*, restrict trade, reduce production, prevent competition, and fix pricing. Cal. Bus. & Prof. Code § 16720. Furthermore, the Cartwright Act provides that individuals injured by antitrust violations may bring a private cause of action to remedy those violations. Cal. Bus. & Prof. Code § 16750.

36. California's antitrust laws, however, expressly permit private individuals to proceed against antitrust violators for treble damages "whether such injured person dealt directly or

THORSNES BARTOLOTTA & McGUIRE
2550 FIFTH AVENUE ELEVENTH FLOOR
SAN DIEGO, CALIFORNIA 92103
(619) 236-9363 FAX (619) 236-9653

indirectly with the defendant." Cal. Bus. & Prof. Code § 16750(a).

**C. The California Unfair Competition Laws**

37. California Business & Professions Code § 17200, *et seq.*, also known as the Unfair Practices Act, provides that "unfair competition shall mean and include any unlawful, unfair, or fraudulent business act or practice." Unlawful acts include any act that is unlawful under statute, rule, or court order and that is conducted as part of any business activity.

38. Pursuant to Business & Professions Code § 17203, "the court may make such orders or judgments, including the appointment of a receiver, as may be necessary to prevent the use or employment by any person of any practice which constitutes unfair competition, as defined in this chapter, or as may be necessary to restore to any person in interest any money or property, real or personal, which may have been acquired by means of such unfair competition."

## VI.

## FACTUAL BACKGROUND

39. The NBA is currently comprised of twenty-nine independently owned and operated professional basketball teams, which have joined the NBA in order to compete in the professional basketball league that it operates.

40. Each of the twenty-nine NBA professional basketball teams is franchised by the NBA. In addition to Defendants, those franchise teams operate under the following names: Boston Celtics, Miami Heat, New Jersey Nets, Orlando Magic, Philadelphia 76ers, Washington Wizards, Atlanta Hawks, Charlotte Hornets, Cleveland Cavaliers, Detroit Pistons, Indiana Pacers, Milwaukee Bucks, Toronto Raptors, Dallas Mavericks, Denver Nuggets, Houston Rockets, Minnesota Timberwolves, San Antonio Spurs, Vancouver Grizzlies, Golden State Warriors, Phoenix Suns, and Seattle SuperSonics. These twenty-nine teams shall be collectively referenced herein as "NBA Teams." Each NBA Team is an independent business entity. They compete with one another with respect to, *inter alia*, the acquisition of players, coaches, and management personnel. Each NBA Team derives separate revenues from local television and radio, parking, concessions, and box seating. No NBA Team shares its team's expenses, capital expenditures,

THORSNES BARTOLOTTA & McGUIRE
2550 FIFTH AVENUE ELEVENTH FLOOR
SAN DIEGO, CALIFORNIA 92103
(619) 236-9363 FAX (619) 236-9653

profits, or losses with any other NBA Team.

41. NBA Teams have authorized the NBA, through its Board of Governors and Commissioner, and/or NBA Properties, Inc. to contract on their behalf for the live video telecasting of certain regular season and post-season games.

42. Each NBA Team has agreed to not to compete in the sale of rights for the live video telecasting of regular season games. The NBA Teams have, pursuant to the aforementioned Sports Broadcasting Act, jointly agreed to sell the rights to selected regular season games to the NBA to sell to television networks for over-the-air broadcasting. The NBA Teams have also jointly agreed to sell rights to other selected regular season games to the TNT or TBS stations for national cable broadcasting. Prior to the 1994-95 season, with the exception of these games, the NBA Teams agreed that, with few specified exceptions, no regular season games could be shown in any geographic market except those licensed by the NBA Team in that area.

43. In our increasingly mobile society, a significant number of NBA consumers, including many members of the classes that Plaintiffs seek to represent, grew up and developed strong loyalties to NBA Teams in certain geographic markets. These consumers wish to view the out-of-market games from certain geographic markets but do not wish to purchase the out-of-market games from other geographic markets.

44. Beginning in the 1994-95 NBA season, the NBA Teams, the NBA, and NBA Properties, Inc. – seeking to exploit the market described in paragraph 43 as well as the demand of some residential and commercial establishments for access to many out-of-market games – agreed to sell jointly their broadcast rights to purchasers of satellite television programming at artificially inflated prices. The NBA Teams, the NBA, and NBA Properties, Inc. made available for purchase as a package to residential and commercial satellite dish owners broadcasts of up to forty out-of-market regular season NBA games per week and more than 1000 regular season games per year. This package is called the "NBA League Pass."

45. The NBA Teams, the NBA, and NBA Properties, Inc. have agreed that "NBA League Pass" is the exclusive means by which out-of-market games may be licensed for viewing by

THORSNES BARTOLOTTA & McGUIRE
2550 FIFTH AVENUE ELEVENTH FLOOR
SAN DIEGO, CALIFORNIA 92103
(619) 236-9363 FAX (619) 236-9653

satellite by individual consumers or commercial establishments. Individual teams are prohibited, by mutual agreement, from distributing their games outside their assigned geographic territory by any means except the "NBA League Pass," for which consumers must pay a fixed subscription price for the entire package. As of November 2, 1999, the fixed subscription price of the "NBA League Pass" for the following basketball season was as follows: (1) residential use - $169; (2) commercial use - $599 - $7499 depending upon fire occupancy code capacity.

46. The substantial terms of the continuing agreement and conspiracy among the Defendants were to fix, raise, stabilize, and maintain prices for the rights to, and to restrict the output of, video broadcasts of NBA games.

47. The NBA Teams, the NBA, and NBA Properties, Inc., have contracted with Defendant DirecTV to provide the "NBA League Pass" to residential and commercial owners of a C-band or Ku-band DSS satellite dish antenna.

48. Defendants NBA and NBA Properties, Inc. and the NBA Teams, in contracting with DirecTV, exercise significant control over the market for these games and for the consumer cost of "NBA League Pass."

49. The NBA Teams and Defendants NBA and NBA Properties, Inc. and DirecTV have agreed to "black out" the re-broadcast of NBA games shown on regional sports networks, except for those games shown within the designated territory of the NBA Teams involved in each particular game.

50. The agreement to restrain the sale of rights to any NBA game outside of the team's assigned geographic territory except through "NBA League Pass" is not reasonably necessary to achieve any legitimate business objective. An exclusive agreement is not necessary to assure the viability of "NBA League Pass," but only serves to artificially raise the price paid, reduce output, and render output unresponsive to consumer demand. The system of exclusive geographic territories is not necessary to preserve the viability of any individual NBA Team in attracting fans to live games, but only serves to artificially increase prices. The system of exclusive territories is not necessary to preserve the quality and attractiveness of NBA games by promoting competitive

THORSNES BARTOLOTTA & McGUIRE
2550 FIFTH AVENUE ELEVENTH FLOOR
SAN DIEGO, CALIFORNIA 92103
(619) 236-9363 FAX (619) 236-9653

balance among NBA teams as this concern could be addressed, as it is in Major League Baseball, by a system of revenue-sharing. In sum, the NBA Teams have no basis to design the system of exclusive territories in order to preserve incentives for NBA Teams to vigorously promote NBA games within their local territory.

51. For the purpose of formulating and effectuating this contract, combination, and conspiracy, Defendants and their co-conspirators have done, among other things, the following: (a) Agreed to divide North America into exclusive geographic territories for the sale of broadcast rights to regular season NBA games; (b) Contracted and agreed to restrict the output of the broadcasts of their games in non-exempt channels of distribution; (c) Agreed to sell their broadcast rights to purchasers of satellite television programming exclusively through a single, jointly developed product, "NBA League Pass," at prices significantly in excess of those that consumers would pay; and (d) Agreed and conspired to distribute these broadcasts to satellite dish owners on an exclusive basis through DirecTV thereby limiting and restricting competition at the consumer level.

## VII.

## FIRST CAUSE OF ACTION

**Violation of the Sherman Act, § 1**
(On Behalf of All Plaintiffs and Classes)

52. Plaintiffs reallege and incorporate by reference as if specifically set forth herein Paragraphs 1 through 51 inclusive.

53. Beginning in or about 1994 and continuing through the present, Defendants and their co-conspirators entered into and engaged in a continuing contract, combination, and conspiracy in unreasonable restraint of interstate trade and commerce in violation of the Sherman Act.

54. Participating in that continuing contract, combination, and conspiracy were Defendants and each of the NBA Teams listed in paragraph 40 above.

55. The continuing contract, combination, and conspiracy concerned or restrained the

THORSNES BARTOLOTTA & McGUIRE
2550 FIFTH AVENUE ELEVENTH FLOOR
SAN DIEGO, CALIFORNIA 92103
(619) 236-9363 FAX (619) 236-9653

THORSNES BARTOLOTTA & McGUIRE
2550 FIFTH AVENUE ELEVENTH FLOOR
SAN DIEGO, CALIFORNIA 92103
(619) 236-9363 FAX (619) 236-9653

trade and/or commerce of satellite broadcasting of NBA professional basketball games through "NBA League Pass" throughout the United States, including this District. The NBA Teams are located in, and communicate between, varying states throughout the United States. The DirecTV satellite broadcasts are transmitted nationwide. This conduct was, therefore, within the flow of, and had a substantial effect on, interstate commerce.

56. The aforesaid contract, combination, and conspiracy consisted of a continuing agreement and conspiracy among Defendants and their co-conspirators, the substantial terms of which were to fix, raise, stabilize, and maintain prices for the rights to, and restrict the output of, live video broadcasts of NBA professional basketball games through non-exempt channels of distribution.

57. For the purpose of formulating and effectuating this contract, combination, and conspiracy, Defendants and their co-conspirators have done, among other things, the following: (a) Defendants NBA, NBA Properties, Inc., and each of the NBA Teams contracted and agreed to set the prices at which the NBA, and the NBA Teams, would sell their broadcast rights through "NBA League Pass" and contracted and agreed to restrict the output of the broadcasts of their games in non-exempt channels of distribution; (b) Defendants and their co-conspirators agreed to jointly sell their exclusive broadcast rights to purchasers of satellite television programming at highly competitive prices; (c) Defendants and their co-conspirators agreed to allocate amongst themselves from the sale of these satellite television broadcast rights; and (d) Defendants and their co-conspirators agreed and conspired to distribute these broadcasts on an exclusive basis through DirecTV thereby limiting and restricting competition at the consumer level.

58. The aforementioned contract, combination, and conspiracy alleged in this Complaint has had the following effects, among other: (a) The restraint and suppression of NBA television broadcast rights; (b) Consumer prices have been raised, fixed, maintained, and stabilized at artificially high and non-competitive levels; (c) The output of live video broadcasts of NBA professional basketball games in non-exempt channels of distribution has been restricted; and (d) Plaintiffs and other purchasers of "NBA League Pass" were deprived of the benefit of free and

open competition.

59. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff Classes, and each of them, have been injured in an amount continuing and presently undetermined. Each has purchased the "NBA League Pass" at artificially inflated prices. Because these antitrust violations continue today and are likely to continue in the future, Plaintiff Classes suffer from an immediate and significant threat of and actual injury from Defendants and their co-conspirators' violation of the antitrust laws.

60. Wherefore, Plaintiffs pray for judgment against Defendants, as set forth below.

## VIII.

## SECOND CAUSE OF ACTION

**Violation of the Sherman Act, § 2**
(On Behalf of All Plaintiffs and Classes)

THORSNES BARTOLOTTA & McGUIRE
2550 FIFTH AVENUE ELEVENTH FLOOR
SAN DIEGO, CALIFORNIA 92103
(619) 236-9363 FAX (619) 236-9653

61. Plaintiffs reallege and incorporate by reference as if specifically set forth herein Paragraphs 1 through 60 inclusive.

62. The relevant product market is the market for live video broadcasts or out-of-market regular season NBA games.

63. Defendant NBA, Defendant NBA Properties, Inc., Defendant DirecTV, and the NBA Teams have by agreement reserved the exclusive satellite broadcast rights as to certain NBA basketball games and have thereby created a product, the "NBA League Pass." They have further agreed to offer that product as a pay service only.

64. Defendant NBA, Defendant NBA Properties, Inc., Defendant DirecTV, and the NBA Teams offer the reserved basketball games as the "NBA League Pass" exclusively for a fixed and artificially inflated price, thereby conspiring to eliminate any consumer competition for this product and forcing consumers to pay that fixed and artificially inflated price in order to obtain the "NBA League Pass."

65. Defendants and their co-conspirators, by the above-mentioned conduct, possess monopoly power over the reserved basketball games and have used that power for the purposes of

THORSNES BARTOLOTTA & McGUIRE
2550 FIFTH AVENUE ELEVENTH FLOOR
SAN DIEGO, CALIFORNIA 92103
(619) 236-9363 FAX (619) 236-9653

unreasonably excluding and/or limiting competition. These activities have gone beyond those which could be considered as "legitimate business activities," and are an abuse of market position. Through anti-competitive conduct described herein, Defendants and their co-conspirators have willfully acquired and maintained, and unless restrained by the Court will continue to willfully maintain, that monopoly power by anti-competitive and unreasonably exclusionary conduct. Defendants and their co-conspirators have acted with an intent to illegally acquire and maintain that monopoly power in the relevant product market, and their illegal conduct has enabled them to do so, in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2.

66. Wherefore, Plaintiffs pray for judgment against Defendants, as set forth below.

## IX.

## THIRD CAUSE OF ACTION

### Violation of the Cartwright Act

(On Behalf Plaintiffs Crayton, Miller, The Beer Hunters and Classes A[1] and B[1])

67. Plaintiffs reallege and incorporate by reference as if specifically set forth herein Paragraphs 1 through 66 inclusive.

68. Beginning in or about 1994 and continuing through the present, Defendants and their co-conspirators entered into and engaged in a continuing contract, combination, conspiracy, and/or monopoly in restraint of interstate trade and commerce in violation of the Cartwright Act.

69. Participating in that continuing contract, combination, conspiracy, and/or monopoly were Defendants and each of the NBA Teams listed in paragraph 40 above.

70. For the purpose of formulating and effectuating this contract, combination, conspiracy, and/or monopoly, Defendants and their co-conspirators have done, among other things, the following: (a) Defendants NBA and NBA Properties, Inc., and each of the NBA Teams contracted and agreed to set the prices at which the NBA, and each of the NBA Teams, would sell their broadcast rights through "NBA League Pass" and contracted and agreed to restrict the output of the broadcasts of their games in non-exempt channels of distribution; (b) Defendants and their co-conspirators agreed to jointly sell their exclusive broadcast rights to purchasers of satellite

television programming at highly competitive prices; (c) Defendants and their co-conspirators agreed to allocate amongst themselves from the sale of these satellite television broadcast rights; and (d) Defendants and their co-conspirators agreed and conspired to distribute these broadcasts on an exclusive basis thereby limiting and restricting competition at the consumer level.

71. The aforementioned contract, combination, conspiracy, and/or monopoly alleged in this Complaint has had the following effects, among other: (a) The restraint and suppression of NBA television broadcast rights; (b) Consumer prices have been raised, fixed, maintained, and stabilized at artificially high and non-competitive levels; (c) The output of live video broadcasts of NBA professional basketball games in non-exempt channels of distribution has been restricted; and (d) Plaintiffs and other purchasers of "NBA League Pass" were deprived of the benefit of free and open competition.

72. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff Classes, and each of them, have been injured in an amount continuing and presently undetermined. Each has purchased the "NBA League Pass" at artificially inflated prices. Because these antitrust violations continue today and are likely to continue in the future, Plaintiff Classes suffer from an immediate and significant threat of and actual injury from Defendants and their co-conspirators' violation of the antitrust laws.

73. Wherefore, Plaintiffs pray for judgment against Defendants, as set forth below.

## X.

## FOURTH CAUSE OF ACTION

**Violation of the Unfair Competition Act**
(On Behalf Plaintiffs Crayton, Miller, The Beer Hunters and Classes $A^1$ and $B^1$)

74. Plaintiffs reallege and incorporate by reference as if specifically set forth herein Paragraphs 1 through 73 inclusive.

75. Defendants have, in the course of their respective businesses, engaged in a conspiracy to restrain trade and/or to form a monopoly, as described above. This conduct is unfair, fraudulent, and/or unlawful in violation of the Unfair Competition Act.

THORSNES BARTOLOTTA & McGUIRE
2550 FIFTH AVENUE, ELEVENTH FLOOR
SAN DIEGO, CALIFORNIA 92103
(619) 236-9363 FAX (619) 236-9653

76. The conduct described above offends established public policy and is immoral and/or unethical. Consequently, Defendants have engaged in and continue to engage in unfair business practices in violation of the Unfair Competition Act.

77. The conduct described above is contravened by the Sherman and Cartwright Acts and Defendants have, therefore, engaged in an unlawful business practice in violation of the Unfair Competition Act.

78. On information and belief, Defendants' conduct is likely to deceive the people of the State of California and the general public and Defendants have, therefore, engaged in a fraudulent business practice in violation of the Unfair Competition Act.

79. Wherefore, Plaintiffs pray for judgment against Defendants, as set forth below.

## XI.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs Crayton and Miller and Class A pray as follows:

1. That the Court adjudge, decree, and declare that in connection with their joint and exclusive sale of television rights through "NBA League Pass" Defendants and their co-conspirators have engaged in unlawful contract, combination, conspiracy, and/or monopoly in violation of the Sherman Act;

2. That the Court enjoin the continuation of the unlawful contract, combination, conspiracy, and/or monopoly;

3. That the Court grant certification of the class;

4. That Plaintiffs and members of the Class recover an award of compensatory and treble damages in favor of Plaintiffs and members of the Class with pre-judgment and post-judgment interest as provided by law;

5. That Plaintiffs recover their costs of this suit and reasonable attorneys' fees, as provided by law; and

6. That Plaintiffs and members of the Class be granted such other and further relief as the Court may deem just and proper under the circumstances.

THORSNES BARTOLOTTA & McGUIRE
2550 FIFTH AVENUE ELEVENTH FLOOR
SAN DIEGO, CALIFORNIA 92103
(619) 236-9363 FAX (619) 236-9653

**WHEREFORE**, Plaintiffs Crayton and Miller and Class A[1] pray as follows:

1. That the Court adjudge, decree, and declare that in connection with their joint and exclusive sale of television rights through "NBA League Pass" Defendants and their co-conspirators have engaged in unlawful contract, combination, conspiracy, and/or monopoly in violation of the Cartwright Act;

2. That the Court enjoin the continuation of the unlawful contract, combination, conspiracy, and/or monopoly;

3. That the Court order Defendants to pay to Plaintiffs and members of the Class restitution, disgorgement, and be subject to such other relief as may be necessary to restore to any person in interest any money or property, real or personal, which may have been acquired by means the acts alleged herein, plus pre-judgment and post-judgment interest where applicable and as provided by law;

4. That Plaintiffs and members of the Class recover compensatory and treble damages pursuant to the Cartwright Act with pre-judgment and post-judgment interest as provided by law;

5. That Plaintiffs and members of the Class recover their costs of this suit and including reasonable attorneys' fees; and

6. That Plaintiffs and members of the Class be granted such other and further relief as the Court may deem just and proper under the circumstances.

**WHEREFORE**, Plaintiffs The Beer Hunters and Class B pray as follows:

1. That the Court adjudge, decree, and declare that in connection with their joint and exclusive sale of television rights through "NBA League Pass" Defendants and their co-conspirators have engaged in unlawful contract, combination, conspiracy, and/or monopoly in violation of the Sherman Act;

2. That the Court enjoin the continuation of the unlawful contract, combination, conspiracy, and/or monopoly;

3. That the Court grant certification of the class;

4. That Plaintiffs and members of the Class recover an award of compensatory and

THORSNES BARTOLOTTA & McGUIRE
2550 FIFTH AVENUE ELEVENTH FLOOR
SAN DIEGO, CALIFORNIA 92103
(619) 236-9363 FAX (619) 236-9653

treble damages in favor of Plaintiffs and members of the Class with pre-judgment and post-judgment interest as provided by law;

5. That Plaintiffs recover their costs of this suit and reasonable attorneys' fees, as provided by law; and

6. That Plaintiffs and members of the Class be granted such other and further relief as the Court may deem just and proper under the circumstances.

**WHEREFORE**, Plaintiffs The Beer Hunters and Class B[1] pray as follows:

1. That the Court adjudge, decree, and declare that in connection with their joint and exclusive sale of television rights through "NBA League Pass" Defendants and their co-conspirators have engaged in unlawful contract, combination, conspiracy, and/or monopoly in violation of the Cartwright Act;

2. That the Court enjoin the continuation of the unlawful contract, combination, conspiracy, and/or monopoly;

3. That the Court order Defendants to pay to Plaintiffs and members of the Class restitution, disgorgement, and be subject to such other relief as may be necessary to restore to any person in interest any money or property, real or personal, which may have been acquired by means the acts alleged herein, plus pre-judgment and post-judgment interest where applicable and as provided by law;

4. That Plaintiffs and members of the Class recover compensatory and treble damages pursuant to the Cartwright Act with pre-judgment and post-judgment interest as provided by law;

5. That Plaintiffs and members of the Class recover their costs of this suit and including reasonable attorneys' fees; and

6. That Plaintiffs and members of the Class be granted such other and further relief as the Court may deem just and proper under the circumstances.

///

///

///

THORSNES BARTOLOTTA & McGUIRE
2550 FIFTH AVENUE ELEVENTH FLOOR
SAN DIEGO, CALIFORNIA 92103
(619) 236-9363 FAX (619) 236-9653

XII

**JURY TRIAL DEMANDED**

Plaintiffs, individually and on behalf of the members of the respective Classes, request a jury trial in this matter.

DATED: August 1, 2000 THORSNES BARTOLOTTA & McGUIRE

BY: [signature]
JOHN F. McGUIRE, JR.
PALMA CESAR HOOPER
DARAL B. MAZZARELLA
KAREN R. FROSTROM

GRAYSON, HOVENKAMP & PETROSKI, P.L.L.C.
MARK A. HOVENKAMP, ESQ.

JEFFREY R. VAUGHAN, ESQ. (Pro Hac Vice)
5231 Bellaire Boulevard
Bellaire, Texas 77401-3901
Telephone: (713) 660-0491

OLDENETTEL & ASSOCIATES
JEFFERSON H. READ, ESQ. (Pro Hac Vice)
1360 Post Oak Blvd., Suite 2350
Houston, Texas 77055
Telephone: (713) 622-9220

Attorneys for Plaintiffs

THORSNES BARTOLOTTA & McGUIRE
2550 FIFTH AVENUE ELEVENTH FLOOR
SAN DIEGO, CALIFORNIA 92103
(619) 236-9363 FAX (619) 236-9653

JS 44
(Rev. 3/99)

# CIVIL COVER SHEET

ORIGINAL

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**I. (a) PLAINTIFFS**
KINGRAY, INC. d/b/a THE BEER HUNTER, a California corporation, et al.

**DEFENDANTS**
NATIONAL BASKETBALL ASSOCIATION, INC., a New York corporation, et al.

FILED
00 AUG -1 PM 3:59
CLERK U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY DEPUTY

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF Riverside
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
(See attachment)

ATTORNEYS (IF KNOWN)
'00 CV 1545 JM (LAB)

**II. BASIS OF JURISDICTION** (PLACE AN 'X' IN ONE BOX ONLY)

- [ ] 1 U.S. Government Plaintiff
- [X] 3 Federal Question (U.S. Government Not a Party)
- [ ] 2 U.S. Government Defendant
- [ ] 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (PLACE AN 'X' IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | 1 | 1 | Incorporated or Principal Place of Business In This State | X 4 | 4 |
| Citizen of Another State | 2 | 2 | Incorporated and Principal Place of Business In Another State | 5 | X 5 |
| Citizen or Subject of a Foreign Country | 3 | 3 | Foreign Nation | 6 | 6 |

**IV. NATURE OF SUIT** (PLACE AN "X" IN ONE BOX ONLY)

**CONTRACT**
110 Insurance; 120 Marine; 130 Miller Act; 140 Negotiable Instrument; 150 Recovery of Overpayment & Enforcement of Judgment; 151 Medicare Act; 152 Recovery of Defaulted Student Loans (Excl. Veterans); 153 Recovery of Overpayment of Veteran's Benefits; 160 Stockholders' Suits; 190 Other Contract; 195 Contract Product Liability

**REAL PROPERTY**
210 Land Condemnation; 220 Foreclosure; 230 Rent Lease & Ejectment; 240 Torts to Land; 245 Tort Product Liability; 290 All Other Real Property

**TORTS**
PERSONAL INJURY: 310 Airplane; 315 Airplane Product Liability; 320 Assault, Libel & Slander; 330 Federal Employers' Liability; 340 Marine; 345 Marine Product Liability; 350 Motor Vehicle; 355 Motor Vehicle Product Liability; 360 Other Personal Injury
PERSONAL INJURY: 362 Personal Injury - Med. Malpractice; 365 Personal Injury - Product Liability; 368 Asbestos Personal Injury Product Liability
PERSONAL PROPERTY: 370 Other Fraud; 371 Truth in Lending; 380 Other Personal Property Damage; 385 Property Damage Product Liability

**CIVIL RIGHTS**
441 Voting; 442 Employment; 443 Housing/ Accommodations; 444 Welfare; 440 Other Civil Rights

**PRISONER PETITIONS**
510 Motion to Vacate Sentence
HABEAS CORPUS: 530 General; 535 Death Penalty; 540 Mandamus & Other; 550 Civil Rights; 555 Prison Condition

**FORFEITURE/PENALTY**
610 Agriculture; 620 Other Food & Drug; 625 Drug Related Seizure of Property 21 USC 881; 630 Liquor Laws; 640 R.R. & Truck; 650 Airline Regs.; 660 Occupational Safety/Health; 690 Other

**LABOR**
710 Fair Labor Standards Act; 720 Labor/Mgmt. Relations; 730 Labor/Mgmt. Reporting & Disclosure Act; 740 Railway Labor Act; 790 Other Labor Litigation; 791 Empl. Ret. Inc. Security Act

**BANKRUPTCY**
422 Appeal 28 USC 158; 423 Withdrawal 28 USC 157

**PROPERTY RIGHTS**
820 Copyrights; 830 Patent; 840 Trademark

**SOCIAL SECURITY**
861 HIA (1395ff); 862 Black Lung (923); 863 DIWC/DIWW (405(g)); 864 SSID Title XVI; 865 RSI (405(g))

**FEDERAL TAX SUITS**
870 Taxes (U.S. Plaintiff or Defendant); 871 IRS - Third Party 26 USC 7609

**OTHER STATUTES**
400 State Reapportionment; [X] 410 Antitrust; 430 Banks and Banking; 450 Commerce/ICC Rates/etc.; 460 Deportation; 470 Racketeer Influenced and Corrupt Organizations; 810 Selective Service; 850 Securities/Commodities/ Exchange; 875 Customer Challenge 12 USC 3410; 891 Agricultural Acts; 892 Economic Stabilization Act; 893 Environmental Matters; 894 Energy Allocation Act; 895 Freedom of Information Act; 900 Appeal of Fee Determination Under Equal Access to Justice; 950 Constitutionality of State Statutes; 890 Other Statutory Actions

**V. ORIGIN** (PLACE AN "X" IN ONE BOX ONLY)

X 1 Original Proceeding; 2 Removed from State Court; 3 Remanded from Appellate Court; 4 Reinstated or Reopened; 5 Transferred from Another district (specify); 6 Multidistrict Litigation; 7 Appeal to District Judge from Magistrate Judgment

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY.) 15 U.S.C. sections 1-7; 12-27: Plaintiffs allege that defendants have violated federal antitrust laws.

**VII. REQUESTED IN COMPLAINT:** X CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23 **DEMAND $**
CHECK YES only if demanded in complaint: **JURY DEMAND:** [X] YES [ ] NO

**VIII. RELATED CASE(S) IF ANY** (See instructions): JUDGE ______ DOCKET NUMBER ______

DATE August 1, 2000 SIGNATURE OF ATTORNEY OF RECORD [signature]

FOR OFFICE USE ONLY

RECEIPT # 062647 AMOUNT $150.00 SLD APPLYING IFP ______ JUDGE ______ MAG. JUDGE ______

## ATTACHMENT TO CIVIL COVER SHEET

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

JOHN F. MCGUIRE, JR., ESQ. SB#69176
PALMA CESAR HOOPER, ESQ. SB#93353
DARAL B. MAZZARELLA, ESQ. SB#126864
KAREN R. FROSTROM, ESQ. SB#207044
THORSNES BARTOLOTTA & McGUIRE
2550 Fifth Avenue, Suite 1100
San Diego, CA 92103
Telephone: (619) 236-9363; Fax: (619) 236-9653

MARK A. HOVENKAMP, ESQ. (Pro Hac Vice)
GRAYSON, HOVENKAMP & PETROSKI, P.L.L.C.
1221 McKinney, Suite 3850
Houston, TX 77010
Telephone: (713) 650-3200; Fax: (713) 650-0251

Attorneys for Plaintiffs