















MEG    7/18/01    10:48

3:00-CV-01545   KINGRAY, INC. V. NATIONAL BASKETBALL

*145*

*AMDCMP.*

ORIGINAL

THORSNES BARTOLOTTA & McGUIRE
2550 FIFTH AVENUE, ELEVENTH FLOOR
SAN DIEGO, CALIFORNIA 92103
(619) 236-9363   FAX (619) 236-9653

1    JOHN F. MCGUIRE, JR., ESQ. SB#69176
     DARAL B. MAZZARELLA, ESQ. SB#126864
2    KAREN R. FROSTROM, ESQ. SB#207044
     THORSNES BARTOLOTTA & McGUIRE
3    2550 Fifth Avenue, Suite 1100
     San Diego, CA 92103
4    Telephone: (619) 236-9363;  Fax: (619) 236-9653

5    MARK A. HOVENKAMP, ESQ. (Pro Hac Vice)
     GRAYSON, HOVENKAMP & PETROSKI, P.L.L.C.
6    1221 McKinney, Suite 3850
     Houston, TX  77010
7    Telephone:  (713) 650-3200; Fax:  (713) 650-0251

8    Attorneys for Plaintiffs

9    [Additional counsel appear on signature page]

10

11                    UNITED STATES DISTRICT COURT

12           SOUTHERN DISTRICT OF THE STATE OF CALIFORNIA

13   DANRAY, INC. d/b/a THE BEER HUNTER,  )   CASE NO. 00CV1545 L (BEN)
     a South Dakota corporation; RAYBAN, INC.  )
14   d/b/a THE BEER HUNTER, a South Dakota  )
     corporation; and BOBRAY RESTAURANTS,  )
15   INC. d/b/a THE BEER HUNTER, a California  )   **CLASS ACTION**
     corporation; GARRETT CRAYTON, an  )   **FIRST AMENDED COMPLAINT**
16   individual; JILL MILLER, an individual;  )   **FOR VIOLATIONS OF THE**
     GREGORY L. CUFF, an individual, on behalf  )   **SHERMAN ACT, CLAYTON ACT,**
17   of themselves, all others similarly situated, and  )   **AND CALIFORNIA BUSINESS &**
     the general public,  )   **PROFESSIONS CODE AND**
18                                              )   **DEMAND FOR JURY TRIAL**
                         Plaintiffs,            )
19                                              )
     vs.                                        )
20                                              )
     NATIONAL BASKETBALL ASSOCIATION, )
21   INC., a New York corporation; NBA  )
     PROPERTIES, INC., a New York corporation; )
22   CHICAGO PROFESSIONAL SPORTS  )
     LIMITED PARTNERSHIP d/b/a CHICAGO  )
23   BULLS, an Illinois corporation; LAC  )
     BASKETBALL CLUB, INC. d/b/a LOS  )
24   ANGELES CLIPPERS, a California  )
     corporation; ROYAL KINGS LIMITED  )
25   PARTNERSHIP d/b/a SACRAMENTO  )
     KINGS, a California limited partnership;  )
26   MADISON SQUARE GARDEN, L.P. d/b/a/  )
     NEW YORK KNICKS, a New York  )
27   corporation; THE LOS ANGELES LAKERS,  )
     INC. d/b/a/ LOS ANGELES LAKERS, a  )
     California corporation; JAZZ BASKETBALL  )
28   INVESTORS, INC. d/b/a THE UTAH JAZZ, a )
     Utah corporation; TRAIL BLAZERS, INC.  )

                                                     Case No. 00CV1545L (BEN)

d/b/a PORTLAND TRAILBLAZERS, an )
Oregon corporation;  and DIRECTV, INC., a )
California corporation; )
)
Defendants. )

Plaintiffs, individually and on behalf of the members of the classes described below, bring this antitrust class action for damages, declaratory and injunctive relief under the antitrust laws of the United States and the State of California and under the unfair competition laws of the State of California against the above-named Defendants.  The allegations pertaining to Plaintiffs and their purchase of the "NBA League Pass" are made upon personal knowledge.  The remaining allegations in this Complaint are made on information and belief based upon investigations conducted by Plaintiffs' counsel.  Plaintiffs allege as follows:

## I.

## INTRODUCTION

1.     This lawsuit seeks to remedy a continuing contract, conspiracy, and agreement in restraint of trade and commerce in violation of Section 1 of the Sherman Act.  Such conduct is also in violation of the California Cartwright Act and California's Unfair Competition Laws.  Defendant basketball league, Defendants professional basketball teams, Defendant pay television provider, and others have conspired to sell the "NBA League Pass," an exclusive sports package described in more detail below, to consumers for a fixed fee and have restricted output of live video broadcasts of NBA games in non-exempt channels of distribution.

## II.

## THE PARTIES

A.    **PLAINTIFF REPRESENTATIVES:**

2.     Each named Plaintiff brings this action pursuant to California Business & Professions Code § 17200 et seq. and thereby acts for the interests of the general public.

3.     Plaintiff Danray, Inc. d/b/a The Beer Hunter is a commercial entity doing business in Riverside County, California, which purchased the NBA League Pass in the State of California and the United States of America during the Class Period for the enjoyment of its patrons.

- 2 -

Case No. 00CV1545L (BEN)

THORSNES BARTOLOTTA & McGUIRE
2550 FIFTH AVENUE  ELEVENTH FLOOR
SAN DIEGO, CALIFORNIA  92103
(619) 236-9363  FAX (619) 236-9653

FIRST AMENDED CLASS ACTION COMPLAINT

343356.4

1     4.     Plaintiff Rayban, Inc. d/b/a The Beer Hunter is a commercial entity doing business

2  in Riverside County, California, which purchased the NBA League Pass in the State of California

3  and the United States of America during the Class Period for the enjoyment of its patrons.

4     5.     Plaintiff Bobray Restaurants, Inc. d/b/a The Beer Hunter is a commercial entity

5  doing business in Riverside County, California, which purchased the NBA League Pass in the

6  State of California and the United States of America during the Class Period for the enjoyment of

7  its patrons.

8     6.     Plaintiffs Garrett Crayton and Jill Miller, husband and wife, are individuals and

9  residents of San Diego County, California, who purchased the NBA League Pass within the State

10  of California and the United States of America during the Class Period.

11     7.     Plaintiff Gregory L. Cuff is an individual and resident of San Diego County,

12  California, who purchased the NBA League Pass within the State of California and the United

13  States of America during the Class Period.

14  **B.    DEFENDANTS:**

15     8.     Defendant National Basketball Association, Inc. (hereinafter "NBA") is a New

16  York corporation with its principal place of business at 645 5th Avenue #10, New York, New

17  York.

18     9.     Defendant NBA Properties, Inc. is a corporation, maintaining its principal place of

19  business at 645 Fifth Avenue, New York, New York.

20     10.     Defendant Chicago Professional Sports Limited Partnership d/b/a Chicago Bulls

21  (hereinafter "Bulls") is a professional basketball organization and corporation, incorporated under

22  the laws of the State of Illinois, with its principal place of business at 1901 West Madison Street,

23  Chicago, Illinois 60612.

24     11.     Defendant LAC Basketball Club, Inc. d/b/a Los Angeles Clippers (hereinafter

25  "Clippers") is a professional basketball organization and corporation, incorporated under the laws

26  of the State of California, with its principal place of business at 3939 South Figueroa Street, Los

27  Angeles, CA  90037.

28

THORSNES BARTOLOTTA & McGUIRE
2550 FIFTH AVENUE, ELEVENTH FLOOR
SAN DIEGO, CALIFORNIA 92103
(619) 236-9363  FAX (619) 236-9653

- 3 -

Case No. 00CV1545L (BEN)

343356.4

12.     Defendant Royal Kings Limited Partnership d/b/a Sacramento Kings (hereinafter "Kings") is a professional basketball organization and limited partnership, registered under the laws of the State of California, with its principal place of business at 2613 Arbury Court, Sacramento, CA 95833.

13.     Defendant Madison Square Garden, L.P. d/b/a/ New York Knicks (hereinafter "Knicks") is a professional basketball organization and corporation, registered under the laws of the State of New York, with its principal place of business at Two Pennsylvania Plaza, New York, NY 10121.

14.     Defendant The Los Angeles Lakers, Inc. d/b/a/ Los Angeles Lakers (hereinafter "Lakers") is a professional basketball organization and corporation, registered under the laws of the State of California, with its principal place of business at 3900 West Manchester Boulevard, Inglewood, CA 90305.

15.     Defendant Jazz Basketball Investors, Inc. d/b/a The Utah Jazz (hereinafter "Jazz") is a professional basketball organization and corporation, registered under the laws of the State of Utah, with its principal place of business at 5650 South State Street, Murray, Utah 84107.

16.     Defendant Trail Blazers, Inc. d/b/a Portland Trailblazers (hereinafter "Trailblazers") is a professional basketball organization and corporation, registered under the laws of the State of Oregon, with its principal place of business at One Center Court, Suite 200, Portland, Oregon 97227.

17.     Defendant DirecTV, Inc. is a corporation, registered under the laws of California, with its principal place of business at 2330 East Imperial Highway, El Segundo, CA 90245.

18.     The acts charged in this Complaint were authorized, directed, or executed by Defendants and their co-conspirators or their officers, agents, employees, or representatives while actively engaged in their course of business.

19.     At all times relevant, Defendant DirecTV, Inc., a provider of high power direct broadcast satellite service, acted as an agent and/or co-conspirator of Defendants NBA and/or NBA Properties, Inc., and was authorized and/or controlled by those Defendants to sell residual live television rights held by the NBA and/or NBA Properties, Inc. as agents for the individual

- 4 -

THORSNES BARTOLOTTA & McGUIRE
2550 FIFTH AVENUE   ELEVENTH FLOOR
SAN DIEGO, CALIFORNIA 92103
(619) 236-9363   FAX (619) 236-9653

1  professional basketball teams and owners of the NBA, including the rights to sell "NBA League

2  Pass."

3         20.     At all times relevant, Defendants NBA and/or NBA Properties, Inc. acted as an

4  agent of the individual professional basketball teams and owners of the NBA and were authorized

5  by said teams and owners to sell "NBA League Pass."

6  **III.**

7  **CLASS ALLEGATIONS**

8  **A.    Residential Satellite Consumers Injured by the Anti-Competitive Conspiracies**

9  **Amongst DirecTV, Inc. and the NBA Defendants (national and state-wide):**

10         21.     Plaintiff Garrett Crayton ("Crayton") and Plaintiff Jill Miller ("Miller") each bring

11  this action on their individual behalf and on behalf of all persons and entities similarly situated.

12  *The class Plaintiffs Crayton and Miller represent is composed of all persons and entities who*

13  *purchased the residential service package known as the "NBA League Pass" from DirecTV,*

14  *Inc. in a jurisdiction subject to the laws of the United States of America during the Class Period*

15  *(hereinafter "Class A").*  The persons and entities in the class are so numerous that the joinder of

16  all such persons and entities is impracticable and the disposition of their claims in a class action

17  will benefit the parties and the Court.

18         22.     Plaintiffs Crayton and Miller each further bring this action on their individual

19  behalf and on behalf of all persons and entities similarly situated as a subclass. *The subclass*

20  *Plaintiffs represent is composed of all persons and entities who purchased the residential*

21  *service package known as the "NBA League Pass" from DirecTV, Inc. in a jurisdiction subject*

22  *to the laws of the State of California during the Class Period (hereinafter "Class A¹").*  The

23  persons and entities in the class are so numerous that the joinder of all such persons and entities is

24  impracticable and the disposition of their claims in a class action will benefit the parties and the

25  Court.

26         23.     Plaintiffs Crayton and Miller allege that there is a "Customer Agreement" between

27  themselves and Defendant DirecTV which states that DirecTV "cannot offer Service to different

28  customers on different terms."  Based on the aforementioned "Customer Agreement", this

- 5 -

Case No. 00CV1545L (BEN)

FIRST AMENDED CLASS ACTION COMPLAINT

343356.4

1  Plaintiffs believe that similar and/or analogous customer agreements exist between DirecTV and
2  other class members.

3       24.    The claims of Plaintiffs Crayton and Miller are typical of those of Class A and of
4  Class A[1]. Plaintiffs Crayton and Miller will fairly and adequately represent the interests of these
5  classes.

6       25.    There is a well-defined community of interest in the questions of law and fact
7  affecting Classes A and A[1], including but not limited to whether the NBA, NBA Properties, the
8  NBA teams, and DirecTV have:

9          (a) Agreed, conspired, and/or contracted to divide North America into exclusive
10         geographic territories for the sale of satellite television broadcast rights to regular season
11         NBA games;
12         (b) Agreed, conspired, and/or contracted to restrict the output of the broadcasts of NBA
13         professional basketball games in non-exempt channels of distribution (such as satellite
14         broadcasting);
15         (c) Agreed, conspired, and/or contracted to bundle and sell broadcast rights to purchasers
16         of satellite television programming exclusively through a single, jointly developed product,
17         "NBA League Pass," at artificially inflated prices;
18         (d) Contracted, conspired, and agreed to set the prices of the "NBA League Pass" at
19         artificially inflated and fixed levels, using a vertical price-fixing scheme setting minimum
20         prices ("Deemed Prices") which Deemed Prices have in reality been the prices charged to
21         consumers;
22         (e) Agreed, conspired, and/or contracted to distribute these broadcasts to satellite dish
23         owners/users on an exclusive basis through DirecTV, thereby limiting and restricting
24         competition at the consumer level; and
25         (f) Agreed, conspired and/or contracted to engage in an exclusive distributorship whereby
26         the NBA would become DirecTV's exclusive source of NBA games and any other
27         programming regarding the NBA and whereby DirecTV would become the NBA's
28         exclusive distributor of satellite programming;

- 6 -

THORSNES BARTOLOTTA & McGUIRE
2550 FIFTH AVENUE ELEVENTH FLOOR
SAN DIEGO CALIFORNIA 92103
(619) 236-9363  FAX (619) 236-9653

THORSNES BARTOLOTTA & McGUIRE
2550 FIFTH AVENUE, ELEVENTH FLOOR
SAN DIEGO, CALIFORNIA 92103
(619) 236-9363  FAX (619) 236-9653

1  and also whether Plaintiffs and other members of the classes were injured by Defendants' conduct

2  and, if so, whether damages and declaratory and injunctive relief is appropriate.  These questions

3  predominate over questions that affect only individual class members.

4    26. The prosecution of individual remedies by members of the named Classes would

5  tend to establish inconsistent standards of conduct for the Defendants and result in the impairment

6  of the class members' rights and the disposition of their interests through actions to which they

7  were not parties.  However, as Defendants have acted on grounds generally applicable to all

8  classes, final injunctive relief and/or corresponding declaratory relief with respect to the classes

9  are appropriate.

10  **B. Residential Cable Television Consumers Injured by the Anti-Competitive Conspiracies**

11  **Amongst the NBA Defendants (national and state-wide):**

12    27. Plaintiff Gregory L. Cuff ("Cuff") brings this action on his individual behalf and on

13  behalf of all persons and entities similarly situated.  ***The class he represents is composed of all***

14  ***persons and entities which have purchased the residential service package known as the "NBA***

15  ***League Pass" from a cable service provider in a jurisdiction subject to the laws of the United***

16  ***States of America during the Class Period (hereinafter "Class B").***  The persons and entities in

17  the class are so numerous that the joinder of all such entities is impracticable and the disposition of

18  their claims in a class action will benefit the parties and the Court.

19    28. Plaintiff Gregory L. Cuff ("Cuff") brings this action on his individual behalf and on

20  behalf of all persons and entities similarly situated.  ***The subclass he represents is composed of all***

21  ***persons and entities which have purchased the residential service package known as the "NBA***

22  ***League Pass" from a cable television service provider in a jurisdiction subject to the laws of the***

23  ***State of California during the Class Period (hereinafter "Class B¹").***  The persons and entities in

24  the class are so numerous that the joinder of all such entities is impracticable and the disposition of

25  their claims in a class action will benefit the parties and the Court.

26    29. The claims of Plaintiff Cuff are typical of those of Class B and Class B¹ and

27  Plaintiff Cuff will fairly and adequately represent the interests of these classes.

28

Case No. 00CV1545L (BEN)

FIRST AMENDED CLASS ACTION COMPLAINT

343356.4

30. There is a well-defined community of interest in the questions of law and fact affecting Classes B and B[1], including but not limited to whether the NBA, NBA Properties, the NBA teams, and their co-conspirators have:

(a) Agreed, conspired, and/or contracted to divide North America into exclusive geographic territories for the sale of cable pay-per-view television broadcast rights to regular season NBA games;

(b) Agreed, conspired, and/or contracted to restrict the output of the broadcasts of NBA professional basketball games in non-exempt channels of distribution (such as cable pay-per-view television);

(c) Agreed, conspired, and/or contracted to bundle and sell broadcast rights to purchasers of cable television programming exclusively through a single, jointly developed product, "NBA League Pass," at artificially inflated prices; and

(d) Contracted, conspired, and agreed to set the prices of the "NBA League Pass" at artificially inflated and fixed levels;

and also whether Plaintiff and other members of the classes were injured by Defendants' conduct and, if so, whether damages and declaratory and injunctive relief is appropriate. These questions predominate over questions that affect only individual class members.

31. The prosecution of individual remedies by members of the named Classes would tend to establish inconsistent standards of conduct for the Defendants and result in the impairment of the class members' rights and the disposition of their interests through actions to which they were not parties. However, as Defendants have acted on grounds generally applicable to all classes, final injunctive relief and/or corresponding declaratory relief with respect to the classes are appropriate.

**C.   Commercial Satellite Consumers Injured by the Anti-Competitive Conspiracies Amongst DirecTV, Inc. and the NBA Defendants (national and state-wide):**

32. Plaintiffs Danray, Inc. d/b/a The Beer Hunter; Rayban, Inc. d/b/a The Beer Hunter; and Bobray Restaurants, Inc. d/b/a The Beer Hunter (hereinafter collectively "The Beer Hunters"), each bring this action on their individual behalf and on behalf of all persons and entities

- 8 -

THORSNES, BARTOLOTTA & McGUIRE
2550 FIFTH AVENUE, ELEVENTH FLOOR
SAN DIEGO, CALIFORNIA 92103
(619) 236-9363  FAX (619) 236-9653

Case No. 00CV1545L (BEN)

343356.4

similarly situated. *The class The Beer Hunters represent is composed of all persons and entities which have purchased the commercial package known as the "NBA League Pass" from DirecTV, Inc. in a jurisdiction subject to the laws of the United States of America during the Class Period (hereinafter "Class C").* The persons and entities in the class are so numerous that the joinder of all such persons and entities is impracticable and the disposition of their claims in a class action will benefit the parties and the Court.

33.    Plaintiffs Danray, Inc. d/b/a The Beer Hunter; Rayban, Inc. d/b/a The Beer Hunter; and Bobray Restaurants, Inc. d/b/a The Beer Hunter each further bring this action on their individual behalf and on behalf of all persons and entities similarly situated as a subclass. *The subclass The Beer Hunters represent is composed of all persons and entities which have purchased the commercial package known as the "NBA League Pass" from DirecTV, Inc. in a jurisdiction subject to the laws of the State of California during the Class Period (hereinafter "Class C¹").* The persons and entities in the class are so numerous that the joinder of all such persons and entities is impracticable and the disposition of their claims in a class action will benefit the parties and the Court.

34.    The claims of The Beer Hunters are typical of those of Class C and Class C¹ and those Plaintiffs will fairly and adequately represent the interests of these classes.

35.    There is a well-defined community of interest in the questions of law and fact affecting Classes C and C¹, including but not limited to whether the NBA, NBA Properties, the NBA teams, and DirecTV have:

(a) Agreed, conspired, and/or contracted to divide North America into exclusive geographic territories for the sale of satellite television broadcast rights to regular season NBA games;

(b) Agreed, conspired, and/or contracted to restrict the output of the broadcasts of NBA professional basketball games in non-exempt channels of distribution (such as satellite broadcasting);

(c) Agreed, conspired, and/or contracted to bundle and sell broadcast rights to purchasers of satellite television programming exclusively through a single, jointly developed product,

- 9 -

Case No. 00CV1545L (BEN)

343356.4

THORSNES BARTOLOTTA & McGUIRE
2550 FIFTH AVENUE, ELEVENTH FLOOR
SAN DIEGO, CALIFORNIA 92103
(619) 236-9363 FAX (619) 236-9653

1    "NBA League Pass," at artificially inflated prices;

2    (d) Contracted, conspired, and agreed to set the prices of the "NBA League Pass" at

3    artificially inflated and fixed levels, using a vertical price-fixing scheme setting minimum

4    prices ("Deemed Prices") which Deemed Prices have in reality been the prices charged to

5    consumers;

6    (e) Agreed, conspired, and/or contracted to distribute these broadcasts to satellite dish

7    owners/users on an exclusive basis through DirecTV, thereby limiting and restricting

8    competition at the consumer level; and

9    (f) Agreed, conspired and/or contracted to engage in an exclusive distributorship whereby

10   the NBA would become DirecTV's exclusive source of NBA games and any other

11   programming regarding the NBA and whereby DirecTV would become the NBA's

12   exclusive distributor of satellite programming;

13   and also whether Plaintiffs and other members of the classes were injured by Defendants' conduct

14   and, if so, whether damages and declaratory and injunctive relief is appropriate.  These questions

15   predominate over questions that affect only individual class members.

16        36.    The prosecution of individual remedies by members of the named Classes would

17   tend to establish inconsistent standards of conduct for the Defendants and result in the impairment

18   of the class members' rights and the disposition of their interests through actions to which they

19   were not parties.  However, as Defendants have acted on grounds generally applicable to all

20   classes, final injunctive relief and/or corresponding declaratory relief with respect to the classes

21   are appropriate.

22                                      **IV.**

23                        **JURISDICTION AND VENUE**

24        37.    This Complaint was filed and these proceedings instituted under the Clayton Act

25   for violations of the Sherman Act, 15 U.S.C. §§ 15 and 26, the Cartwright Act, Cal. Bus & Prof.

26   Code § 16700, *et seq.*, and the Unfair Competition Act, Cal. Bus. & Prof. Code § 17204, to obtain

27   damages and declaratory and injunctive relief against Defendants for the injuries Plaintiffs and

28   class members sustained by reason of violations of these state and federal laws.

- 10 -

Case No. 00CV1545L (BEN)

FIRST AMENDED CLASS ACTION COMPLAINT

343356.4

THORSNES BARTOLOTTA & McGUIRE
2550 FIFTH AVENUE ELEVENTH FLOOR
SAN DIEGO, CALIFORNIA 92103
(619) 236-9363  FAX (619) 236-9653

38.     Jurisdiction in this Court is proper under 28 U.S.C. §§ 1331, 1337, and 1367.

39.     The conspiracy charged in this Complaint, either directly or through interstate commerce/trade was carried out, at least in part, in the Southern District of California. All named Defendants transact business and/or can be found doing business in this District. Certain of the unlawful, unfair, and/or fraudulent business practices alleged herein were performed or had effects in this judicial district. Venue is, therefore, proper under 28 U.S.C. § 1391, 15 U.S.C. § 22, and Cal. Bus. & Prof. Code § 16750(a).

## V.

## STATUTORY BACKGROUND

### A.    FEDERAL ANTITRUST LAWS

40.     The Sherman Act, 15 U.S.C. §§ 1-7, protects trade and commerce against unlawful restraints and monopolies. Section 1 prohibits contracts and conspiracies seeking to restrain trade.

41.     The Clayton Act, 15 U.S.C. §§ 12-27, provides for private enforcement of the provisions of the Sherman Act. Persons injured as a result of Sherman Act violations may receive treble damages and attorneys' fees. 15 U.S.C. § 15. Additionally, any "person, firm, corporation, or association" may seek an injunction concerning Sherman Act violations. 15 U.S.C. § 27.

42.     Prior to the enactment of the Sports Broadcasting Act ("SBA"), collective agreements between professional sports leagues and broadcast television providers were found to be horizontal agreements in violation of the Sherman Act. *See United States v. National Football League*, 196 F. Supp. 445 (E.D. Pa. 1961). However, following the *National Football League* decision, the professional sports leagues successfully lobbied for the SBA, which carves out an exemption for a clearly delineated class of such agreements.

43.     Under the SBA, 15 U.S.C. § 1291, the antitrust laws "shall not apply to any joint agreement [concerning] organized professional team sports of football, baseball, basketball, or hockey . . . in the sponsored telecasting of the games of football, baseball, basketball, or hockey." "Sponsored telecasting", as provided by the SBA, pertains only to network broadcast television and does not apply to non-exempt channels of distribution such as cable television, pay-per-view, and satellite television networks.

- 11 -

THORSNES BARTOLOTTA & McGUIRE

2550 FIFTH AVENUE ELEVENTH FLOOR
SAN DIEGO, CALIFORNIA 92103
(619) 236-9363 FAX (619) 236-9653

FIRST AMENDED CLASS ACTION COMPLAINT

Case No. 00CV1545L (BEN)

343356.4

**B.    CALIFORNIA ANTITRUST LAWS**

44.    California has chosen to provide state-level protection against unlawful restraints on trade for the benefit of its citizens via the Cartwright Act, Cal. Bus. & Prof. Code § 16700, *et seq*. The Cartwright Act, like the Sherman Act, prohibits agreements to, *inter alia*, restrict trade, reduce production, prevent competition, and fix pricing. Cal. Bus. & Prof. Code § 16720. Furthermore, the Cartwright Act provides that individuals injured by antitrust violations may bring a private cause of action to remedy those violations. Cal. Bus. & Prof. Code § 16750.

45.    California's antitrust laws, however, expressly permit private individuals to proceed against antitrust violators for treble damages "whether such injured person dealt directly or indirectly with the defendant." Cal. Bus. & Prof. Code § 16750(a).

**C.    THE CALIFORNIA UNFAIR COMPETITION LAWS**

46.    California Business & Professions Code § 17200, *et seq.*, also known as the Unfair Practices Act, provides that "unfair competition shall mean and include any unlawful, unfair, or fraudulent business act or practice." Unlawful acts include any act that is unlawful under statute, rule, or court order and that is conducted as part of any business activity, such as the state and federal antitrust laws described above. A business practice is unfair, and violates unfair competition law, when it offends an established public policy, or when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers. A fraudulent business practice is one likely to deceive the public, whether or not the public actually is deceived.

47.    Pursuant to Business & Professions Code § 17203, "the court may make such orders or judgments, including the appointment of a receiver, as may be necessary to prevent the use or employment by any person of any practice which constitutes unfair competition, as defined in this chapter, or as may be necessary to restore to any person in interest any money or property, real or personal, which may have been acquired by means of such unfair competition."

///

///

///

///

- 12 -

Case No. 00CV1545L (BEN)

343356.4

THORSNES BARTOLOTTA & McGUIRE
2550 FIFTH AVENUE, ELEVENTH FLOOR
SAN DIEGO, CALIFORNIA 92103
(619) 236-9363  FAX (619) 236-9653

# VI.

## FACTUAL BACKGROUND

**A.** **The Genesis of the Conspiracy: The "No Competition" Agreements Between the National Basketball Association and the NBA Teams:**

48.     The NBA is currently comprised of twenty-nine independently owned and operated professional basketball teams, which have joined the NBA in order to compete in the professional basketball league that it operates.

49.     Each of the twenty-nine NBA professional basketball teams is franchised by the NBA. In addition to Defendants, those franchise teams operate under the following names: Boston Celtics, Miami Heat, New Jersey Nets, Orlando Magic, Philadelphia 76ers, Washington Wizards, Atlanta Hawks, Charlotte Hornets, Cleveland Cavaliers, Detroit Pistons, Indiana Pacers, Milwaukee Bucks, Toronto Raptors, Dallas Mavericks, Denver Nuggets, Houston Rockets, Minnesota Timberwolves, San Antonio Spurs, Vancouver Grizzlies, Golden State Warriors, Phoenix Suns, and Seattle SuperSonics. These twenty-nine teams shall be collectively referenced herein as "NBA Teams."

50.     Each NBA Team is an independent business entity. They compete with one another with respect to, *inter alia*, the acquisition of players, coaches, and management personnel. Each NBA Team derives separate revenues from local television and radio, parking, concessions, and box seating. No NBA Team shares its team's expenses, capital expenditures, profits, or losses with any other NBA Team.

51.     NBA Teams have authorized the NBA, through its Board of Governors and Commissioner, and/or NBA Properties, Inc. to contract on their behalf for the live video telecasting of certain regular season and post-season games.

52.     Each NBA Team has agreed with the other NBA Teams and/or with the NBA not to compete in the sale of rights for the live video telecasting of regular season games.

53.     The NBA Teams have, pursuant to the aforementioned Sports Broadcasting Act, jointly agreed to sell the rights to selected regular season games to the NBA to sell to television networks for over-the-air sponsored (free) broadcasting. The NBA Teams have also jointly agreed

- 13 -

343356.4

THORSNES BARTOLOTTA & McGUIRE
2550 FIFTH AVENUE, ELEVENTH FLOOR
SAN DIEGO, CALIFORNIA 92103
(619) 236-9363   FAX (619) 236-9653

1 to sell rights to other selected regular season games to the TNT or TBS stations for non-sponsored

2 (pay) national cable broadcasting.

3     54.    By agreement, each of the games referenced in paragraph 53 can be broadcast only

4 within each team's protected geographical territory ("in-market games").  With few specified

5 exceptions, the agreement(s) amongst the NBA and the NBA Teams forbade the broadcast of any

6 NBA game in any geographic market except those licensed by the NBA Team in that geographic

7 market ("out-of-market games").

8 **B.**    **The Conspiracy Grows and Escalates:  DirecTV, Inc. Joins Forces With the NBA and**

9     **its Co-Conspirators:**

10     55.    Beginning with the 1994-95 NBA season, the NBA Teams, the NBA, and NBA

11 Properties, Inc. agreed to sell jointly their broadcast rights at artificially inflated prices.  They

12 thereby conspired with DirecTV for the broadcast of a bundled package of NBA out-of-market

13 basketball games, agreeing to restrict output of those games according to geographical market,

14 price, and quantity.

15     56.    Pursuant to the combination, conspiracy, and/or contract described in paragraph 55,

16 the NBA Teams, the NBA, NBA Properties, and DirecTV made available for purchase at a fixed

17 price, a package to residential and commercial satellite dish owners, using a DirecTV-compatible

18 C-band or Ku-band DSS satellite dish antenna broadcasts, of up to forty out-of-market regular

19 season NBA games per week and more than 1000 regular season games per year.  This package is

20 called the "NBA League Pass."  Such satellite users may not opt to purchase these out-of-market

21 games individually, but are required to buy the entire package.

22     57.    The NBA Teams, the NBA, NBA Properties, Inc., and DirecTV have agreed that

23 "NBA League Pass" is the exclusive means by which out-of-market games may be licensed for

24 satellite viewing by individual consumers and/or commercial establishments.  They have further

25 agreed that these games will not be distributed via sponsored telecasts, as would arguably be

26 permitted under the Sports Broadcasting Act.

27     58.    The NBA Teams and Defendants NBA and NBA Properties, Inc. and DirecTV

28 have agreed to "black out" the re-broadcast of certain NBA games to maintain "protected

- 14 -

Case No. 00CV1545L (BEN)

FIRST AMENDED CLASS ACTION COMPLAINT

343356.4

THORSNES BARTOLOTTA & McGUIRE

THORSNES BARTOLOTTA & McGUIRE

2550 FIFTH AVENUE, ELEVENTH FLOOR
SAN DIEGO, CALIFORNIA 92103
(619) 236-9363  FAX (619) 236-9653

1   territories" of certain NBA Teams.  Furthermore, specifically with respect to NBA League Pass,

2   these conspirators have also agreed to black out games publicly advertised as included in the NBA

3   League Pass even when those games are outside of the above-referenced "protected territories."

4   Such black-outs have resulted in reducing the output of NBA professional basketball games.

5           59.     The agreement to restrain the sale of rights to any NBA game outside of the team's

6   assigned geographic territory except through "NBA League Pass" is not reasonably necessary to

7   achieve any legitimate business objective.  The system of exclusive geographic territories is not

8   necessary to preserve the viability of any individual NBA Team in attracting fans to live games,

9   but only serves to artificially increase prices and reduce output.  The system of exclusive territories

10  is not necessary to preserve the quality and attractiveness of NBA games by promoting

11  competitive balance among NBA teams as this concern could be addressed, as it is in Major

12  League Baseball, by a system of revenue-sharing.  In sum, there is no basis to design the system of

13  exclusive territories in order to preserve incentives for NBA Teams to vigorously promote NBA

14  games within their local territory.

15          60.     The substantial terms of the continuing agreement and conspiracy among the NBA,

16  NBA Properties, the NBA Teams, and DirecTV was to fix, raise, stabilize, and maintain prices for

17  the rights to, and to restrict the output of, video broadcasts of out-of-market NBA games.

18  **C.**   **The Conspirators Close the Satellite Market:  Any Possibility Satellite Provider**

19          **Competition is Eliminated**

20          61.     As of 1998, satellite users must purchase the NBA League Pass through DirecTV.

21  No other satellite provider is authorized to provide the NBA League Pass games.

22          62.     On or about April 22, 1998, DirecTV and the NBA executed a renewal contract for

23  the distribution of the "NBA League Pass."  That contract *recited* that DirecTV's distribution

24  rights were "non-exclusive."  However, tongue-in-cheek, it provided that only two distribution

25  licenses would be issued, one to DirecTV and one to PrimeStar and that if DirecTV "became

26  aware" of the termination of PrimeStar's license, it would have the right to become the exclusive

27  distributor of the "NBA League Pass."  Less than one week later, on April 28, 1998, DirecTV

28  devoured its competitor PrimeStar and, not surprisingly, exercised its contractual "option" to

- 15 -

1  become the exclusive distributor of the "NBA League Pass."

2        63.    On or about August 4, 1999, DirecTV and the NBA executed an amended

3  distribution contract confirming that DirecTV was the exclusive distributor of the "NBA League

4  Pass"

5        64.    At least one potential DirecTV competitor, Echostar (also known as Dish Network)

6  continues to offer high power direct broadcast satellite service ("DBS").  However, the

7  combination, conspiracy, and/or contract described above has ensured that Echostar is barred from

8  distribution of the NBA League Pass.

9        65.    An exclusive agreement is not necessary to assure the viability of "NBA League

10  Pass," but only serves to artificially raise the price paid, reduce output, and render output

11  unresponsive to consumer demand.

12  **D.**    **The NBA Defendants and Their Co-Conspirators Step Sideways:  The Contract to**

13        **Serve Up the Artificially Inflated NBA League Pass Product to Cable Subscribers:**

14        66.    The NBA, on behalf of itself and its co-conspirators, contracted with iN Demand,

15  beginning in the year 2000, to provide the "NBA League Pass" to residential cable subscribers on

16  a pay-per-view basis.  "Pay-per-view" programming allows cable subscribers to watch certain

17  events on television for a cost additional to their existing cable rates.  Defendant iN Demand

18  provides "pay-per-view" programming to cable companies and their subscribers nationwide.

19  Cable subscribers must order the "NBA League Pass" through iN Demand although their

20  payments may be processed through the local cable providers and although their service is routed

21  through their local cable companies.

22        67.    In or about January 2000, iN DEMAND, a closely held corporation formerly

23  known as Viewer's Choice, was re-named and re-positioned.  iN Demand is substantially owned

24  by cable service providers TCI Communications, Inc., Time Warner Entertainment, Inc. -

25  Advance/Newhouse Partnership, Comcast Programming Ventures, Inc., MediaOne of Delaware,

26  Inc., and Cox Communications.  These four companies together substantially comprise  the cable

27  service market in the United States.  iN DEMAND serves over 1,800 affiliated systems in with

28  approximately 28 million households nationwide.

THORSNES BARTOLOTTA & McGUIRE
2550 FIFTH AVENUE ELEVENTH FLOOR
SAN DIEGO, CALIFORNIA 92103
(619) 236-9363  FAX (619) 236-9653

- 16 -

68.     At all times relevant, iN DEMAND and/or its shareholders acted as an agent of Defendants  NBA and/or NBA Properties, Inc., and, beginning with the second half of the 1999-2000 basketball season, was authorized and/or controlled by those Defendants to sell residual live television rights held by the NBA and/or NBA Properties, Inc. as agents for the individual professional basketball teams and owners of the NBA, including the rights to sell "NBA League Pass."

69.     Defendants NBA and NBA Properties, Inc. and the NBA Teams, in contracting with iN Demand, exercise significant control over the satellite and cable television market for these games, respectively, and for the consumer cost of "NBA League Pass."

70.     The NBA Teams and Defendants NBA and NBA Properties, Inc. require iN Demand to "black out" the re-broadcast of certain NBA games to maintain "protected territories" of certain NBA Teams.  Furthermore, specifically with respect to NBA League Pass, these conspirators have also agreed to black out games publicly advertised as included in the NBA League Pass even when those games are outside of the above-referenced "protected territories." Such black-outs have resulted in reducing the output of NBA professional basketball games.

71.     The agreement to restrain the sale of rights to any NBA game outside of the team's assigned geographic territory except through "NBA League Pass" is not reasonably necessary to achieve any legitimate business objective.  The system of exclusive geographic territories is not necessary to preserve the viability of any individual NBA Team in attracting fans to live games, but only serves to artificially increase prices and reduce output.  The system of exclusive territories is not necessary to preserve the quality and attractiveness of NBA games by promoting competitive balance among NBA teams as this concern could be addressed, as it is in Major League Baseball, by a system of revenue-sharing.  In sum, the NBA Teams have no basis to design the system of exclusive territories in order to preserve incentives for NBA Teams to vigorously promote NBA games within their local territory.

///

///

///

- 17 -

THORSNES BARTOLOTTA & McGUIRE

2550 FIFTH AVENUE  ELEVENTH FLOOR
SAN DIEGO, CALIFORNIA  92103
(619) 236-9363  FAX (619) 236-9653

# VII.

## FIRST CAUSE OF ACTION
### Violation of the Sherman Act, § 1
(On Behalf of Plaintiffs Crayton, Miller, Beer Hunters and Classes A, A¹, C, and C¹
Against All Defendants)

72.    Plaintiffs reallege and incorporate by reference as if specifically set forth herein Paragraphs 1 through 71 inclusive.

73.    Beginning in or about 1994 and continuing through the present, the NBA, NBA Properties, the NBA Teams, DirecTV, and their co-conspirators entered into and engaged in a continuing contract, combination, and conspiracy in unreasonable restraint of interstate trade and commerce in violation of the Sherman Act, as described above.

74.    The continuing contract, combination, and conspiracy concerned or restrained the trade and/or commerce of satellite television broadcasting of NBA professional basketball games through "NBA League Pass" throughout the United States, including this District.  The NBA Teams are located in, and communicate between, varying states throughout the United States.  The broadcasts of the NBA professional basketball games are transmitted nationwide.  This conduct was, therefore, within the flow of, and had a substantial effect on, interstate commerce.

75.    The aforesaid contract, combination, and conspiracy consisted of a continuing agreement and conspiracy among the NBA, NBA Properties, the NBA Teams, DirecTV, and their co-conspirators, the substantial terms of which were to fix, raise, stabilize, and maintain prices for the rights to, and restrict the output of, live video satellite and cable television broadcasts of NBA professional basketball games through non-exempt channels of distribution.

76.    For the purpose of formulating and effectuating this contract, combination, and conspiracy, the NBA, NBA Properties, the NBA Teams, DirecTV, and their co-conspirators have done, among other things, the following:

(a) Agreed, conspired, and/or contracted to divide North America into exclusive geographic territories for the sale of satellite television broadcast rights to regular season NBA games;

(b) Agreed, conspired, and/or contracted to restrict the output of the broadcasts of NBA

- 18 -

Case No. 00CV1545L (BEN)

343356.4

THORSNES BARTOLOTTA & McGUIRE
2550 FIFTH AVENUE, ELEVENTH FLOOR
SAN DIEGO, CALIFORNIA 92103
(619) 236-9363  FAX (619) 236-9653

1     professional basketball games in non-exempt channels of distribution (such as satellite

2     broadcasting);

3     (c) Agreed, conspired, and/or contracted to bundle and sell broadcast rights to purchasers

4     of satellite television programming exclusively through a single, jointly developed product,

5     "NBA League Pass," at artificially inflated prices;

6     (d) Contracted, conspired, and agreed to set the prices of the "NBA League Pass" at

7     artificially inflated and fixed levels, using a vertical price-fixing scheme setting minimum

8     prices ("Deemed Prices") which Deemed Prices have in reality been the prices charged to

9     consumers;

10     (e) Agreed, conspired, and/or contracted to distribute these broadcasts to satellite dish

11     owners/users on an exclusive basis through DirecTV, thereby limiting and restricting

12     competition at the consumer level; and

13     (f) Agreed, conspired and/or contracted to engage in an exclusive distributorship whereby

14     the NBA would become DirecTV's exclusive source of NBA games and any other

15     programming regarding the NBA and whereby DirecTV would become the NBA's

16     exclusive distributor of satellite programming.

17        77.     The aforementioned contract, combination, and conspiracy alleged in this cause of

18 action has had the following effects, among other:

19     (a) NBA television broadcast output has been restrained, suppressed, and restricted;

20     (b) Consumer prices have been raised, fixed, maintained, and stabilized at artificially high

21     and non-competitive levels;

22     (c) The output of live video satellite broadcasts of NBA professional basketball games in

23     non-exempt channels of distribution has been restricted; and

24     (d) Plaintiffs and other purchasers of "NBA League Pass" have been deprived of the

25     benefit of free and open competition amongst the NBA Teams and amongst satellite

26     television providers.

27        78.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs

28 Crayton, Miller, Beer Hunters and Plaintiff Classes A, A[1], C, and C[1], and each of them, have been

THORSNES BARTOLOTTA & McGUIRE
2550 FIFTH AVENUE, ELEVENTH FLOOR
SAN DIEGO, CALIFORNIA 92103
(619) 236-9363   FAX (619) 236-9653

- 19 -

    343356.4

1  injured in an amount continuing and presently undetermined.  Each has purchased the "NBA

2  League Pass" at artificially inflated prices.  Each has suffered from the reduced output.  Because

3  these antitrust violations continue today and are likely to continue in the future, Plaintiffs Crayton,

4  Miller, Beer Hunters and Plaintiff Classes A, A¹, C, and C¹, and each of them, suffer from an

5  immediate and significant threat of and actual injury from Defendants and their co-conspirators'

6  violation of the antitrust laws.

7       79.   Wherefore, Plaintiffs Crayton, Miller, Beer Hunters on behalf of themselves and on

8  behalf of Plaintiff Classes A, A¹, C, and C¹, pray for judgment against Defendants, as set forth

9  below.

10 **VIII.**

11 **SECOND CAUSE OF ACTION**
**Violation of the Sherman Act, § 1**

12 (On Behalf of All Plaintiff Cuff and Classes B and B¹ Against All Defendants Except DirecTV)

13      80.   Plaintiffs reallege and incorporate by reference as if specifically set forth herein

14 Paragraphs 1 through 79 inclusive.

15      81.   Beginning in or about the year 2000 and continuing through the present, the NBA,

16 NBA Properties, and the NBA Teams and their co-conspirators have entered into and engaged in a

17 continuing contract, combination, and conspiracy in unreasonable restraint of interstate trade and

18 commerce in violation of the Sherman Act.  They have perpetrated this contract, combination, and

19 conspiracy through their agent, cable television provider iN Demand.

20      82.   The continuing contract, combination, and conspiracy concerned or restrained the

21 trade and/or commerce of cable television broadcasting of NBA professional basketball games

22 through "NBA League Pass" throughout the United States, including this District.  The NBA

23 Teams which are the subject of the "NBA League Pass" are located in, and communicate between,

24 varying states throughout the United States.  The cable broadcasts of the NBA professional

25 basketball games are transmitted nationwide.  This conduct was, therefore, within the flow of, and

26 had a substantial effect on, interstate commerce.

27      83.   The aforesaid contract, combination, and conspiracy consisted of a continuing

28 agreement and conspiracy amongst the NBA, NBA Properties, and the NBA Teams and their co-

- 20 -

THORSNES BARTOLOTTA & McGUIRE
2550 FIFTH AVENUE ELEVENTH FLOOR
SAN DIEGO, CALIFORNIA 92103
(619) 236-9363 FAX (619) 236-9653

conspirators, the substantial terms of which were to fix, raise, stabilize, and maintain prices for the rights to, and restrict the output of, live video cable television broadcasts of NBA professional basketball games through non-exempt channels of distribution.

84.     For the purpose of formulating and effectuating this contract, combination, and conspiracy, the NBA, NBA Properties, and the NBA Teams and their co-conspirators have done, among other things, the following:

(a) Agreed, conspired, and/or contracted to divide North America into exclusive geographic territories for the sale of cable pay-per-view television broadcast rights to regular season NBA games;

(b) Agreed, conspired, and/or contracted to restrict the output of the broadcasts of NBA professional basketball games in non-exempt channels of distribution (such as cable pay-per-view television);

(c) Agreed, conspired, and/or contracted to bundle and sell broadcast rights to purchasers of cable television programming exclusively through a single, jointly developed product, "NBA League Pass," at artificially inflated prices; and

(d) Contracted, conspired, and agreed to set the prices of the "NBA League Pass" at artificially inflated and fixed levels.

85.     The aforementioned contract, combination, and conspiracy alleged in this cause of action has had the following effects, among others:

(a) NBA television broadcast output has been restrained, suppressed, and restricted;

(b) Consumer prices have been raised, fixed, maintained, and stabilized at artificially high and non-competitive levels;

(c) The output of live video broadcasts of NBA professional basketball games in non-exempt channels of distribution has been restricted; and

(d) Plaintiffs and other purchasers of "NBA League Pass" have been deprived of the benefit of free and open competition amongst the NBA Teams.

86.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff Cuff and Plaintiff Classes B and B[1], and each of them, have been injured in an amount continuing and

- 21 -

THORSNES BARTOLOTTA & McGUIRE
2550 FIFTH AVENUE ELEVENTH FLOOR
SAN DIEGO, CALIFORNIA 92103
(619) 236-9363  FAX (619) 236-9653

1  presently undetermined.  Each has purchased the "NBA League Pass" at artificially inflated prices.

2  Each has suffered from the reduced output.  Because these antitrust violations continue today and

3  are likely to continue in the future, Plaintiff Cuff and Plaintiff Classes B and B¹ suffer from an

4  immediate and significant threat of and actual injury from Defendants and their co-conspirators'

5  violation of the antitrust laws.

6       87.     Wherefore, Plaintiff Cuff on behalf of himself of on behalf of Plaintiff Classes B

7  and B¹ prays for judgment against Defendants, as set forth below.

8                                    IX.
                            **THIRD CAUSE OF ACTION**
9                      **Violation of the Cartwright Act**
   (On Behalf Plaintiffs Crayton, Miller The Beer Hunters and Classes A¹ and C¹ Against All
10                                 Defendants)

11      88.     Plaintiffs reallege and incorporate by reference as if specifically set forth herein

12  Paragraphs 1 through 87 inclusive.

13      89.     Beginning in or about 1994 and continuing through the present, the NBA, NBA

14  Properties, the NBA Teams, DirecTV, and their co-conspirators entered into and engaged in a

15  continuing contract, combination, and conspiracy in unreasonable restraint of trade in violation of

16  the Cartwright Act, as described above.

17      90.     The continuing contract, combination, and conspiracy concerned or restrained the

18  trade of satellite television broadcasting of NBA professional basketball games through "NBA

19  League Pass" throughout the State of California.

20      91.     The aforesaid contract, combination, and conspiracy consisted of a continuing

21  agreement and conspiracy among the NBA, NBA Properties, the NBA Teams, DirecTV, and their

22  co-conspirators, the substantial terms of which were to fix, raise, stabilize, and maintain prices for

23  the rights to, and restrict the output of, live video satellite and cable television broadcasts of NBA

24  professional basketball games through non-exempt channels of distribution.

25      92.     For the purpose of formulating and effectuating this contract, combination, and

26  conspiracy, the NBA, NBA Properties, the NBA Teams, DirecTV, and their co-conspirators have

27  done, among other things, the following:

28          (a) Agreed, conspired, and/or contracted to divide North America into exclusive

                                   - 22 -

THORSNES BARTOLOTTA & McGUIRE
2550 FIFTH AVENUE  ELEVENTH FLOOR
SAN DIEGO, CALIFORNIA 92103
(619) 236-9363  FAX (619) 236-9653

1    geographic territories for the sale of satellite television broadcast rights to regular season

2    NBA games;

3    (b) Agreed, conspired, and/or contracted to restrict the output of the broadcasts of NBA

4    professional basketball games in non-exempt channels of distribution (such as satellite

5    broadcasting);

6    (c) Agreed, conspired, and/or contracted to bundle and sell broadcast rights to purchasers

7    of satellite television programming exclusively through a single, jointly developed product,

8    "NBA League Pass," at artificially inflated prices;

9    (d) Contracted, conspired, and agreed to set the prices of the "NBA League Pass" at

10    artificially inflated and fixed levels, using a vertical price-fixing scheme setting minimum

11    prices ("Deemed Prices") which Deemed Prices have in reality been the prices charged to

12    consumers;

13    (e) Agreed, conspired, and/or contracted to distribute these broadcasts to satellite dish

14    owners/users on an exclusive basis through DirecTV, thereby limiting and restricting

15    competition at the consumer level; and

16    (f) Agreed, conspired and/or contracted to engage in an exclusive distributorship whereby

17    the NBA would become DirecTV's exclusive source of NBA games and any other

18    programming regarding the NBA and whereby DirecTV would become the NBA's

19    exclusive distributor of satellite programming.

20    93.    The aforementioned contract, combination, and conspiracy alleged in this cause of

21    action has had the following effects, among other:

22    (a) NBA television broadcast output has been restrained, suppressed, and restricted;

23    (b) Consumer prices have been raised, fixed, maintained, and stabilized at artificially high

24    and non-competitive levels;

25    (c) The output of live video satellite broadcasts of NBA professional basketball games in

26    non-exempt channels of distribution has been restricted; and

27    (d) Plaintiffs and other purchasers of "NBA League Pass" have been deprived of the

28    benefit of free and open competition amongst the NBA Teams and amongst satellite

- 23 -

THORSNES BARTOLOTTA & McGUIRE
2550 FIFTH AVENUE, ELEVENTH FLOOR
SAN DIEGO, CALIFORNIA 92103
(619) 236-9363  FAX (619) 236-9653

Case No. 00CV1545L (BEN)

FIRST AMENDED CLASS ACTION COMPLAINT

343356.4

1   television providers.

2   94.   As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs

3   Crayton, Miller, Beer Hunters and Plaintiff Classes A, A¹, C, and C¹, and each of them, have been

4   injured in an amount continuing and presently undetermined.  Each has purchased the "NBA

5   League Pass" at artificially inflated prices.  Each has suffered from the reduced output.  Because

6   these antitrust violations continue today and are likely to continue in the future, Plaintiffs Crayton,

7   Miller, Beer Hunters and Plaintiff Classes A, A¹, C, and C¹, and each of them, suffer from an

8   immediate and significant threat of and actual injury from Defendants and their co-conspirators'

9   violation of the antitrust laws.

10   95.   Wherefore, Plaintiffs Crayton, Miller, Beer Hunters on behalf of themselves and on

11   behalf of Plaintiff Classes A, A¹, C, and C¹, pray for judgment against Defendants, as set forth

12   below.

## X.
## FOURTH CAUSE OF ACTION
### Violation of the Cartwright Act
(On Behalf Plaintiff Cuff and Class B¹ Against all Defendants Except DirecTV, Inc.)

16   96.   Plaintiffs reallege and incorporate by reference as if specifically set forth herein

17   Paragraphs 1 through 95 inclusive.

18   97.   Beginning in or about the year 2000 and continuing through the present, the NBA,

19   NBA Properties, and the NBA Teams and their co-conspirators have entered into and engaged in a

20   continuing contract, combination, and conspiracy in unreasonable restraint of trade in violation of

21   the Cartwright Act.  They have perpetrated this contract, combination, and conspiracy through

22   their agent, cable television provider iN Demand.

23   98.   The continuing contract, combination, and conspiracy concerned or restrained the

24   trade of cable television broadcasting of NBA professional basketball games through "NBA

25   League Pass" throughout the State of California.

26   99.   The aforesaid contract, combination, and conspiracy consisted of a continuing

27   agreement and conspiracy amongst the NBA, NBA Properties, and the NBA Teams and their co-

28   conspirators, the substantial terms of which were to fix, raise, stabilize, and maintain prices for the

- 24 -

THORSNES BARTOLOTTA & McGUIRE
2550 FIFTH AVENUE  ELEVENTH FLOOR
SAN DIEGO, CALIFORNIA  92103
(619) 236-9363  FAX (619) 236-9653

Case No. 00CV1545L (BEN)

FIRST AMENDED CLASS ACTION COMPLAINT

343356.4

1  rights to, and restrict the output of, live video cable television broadcasts of NBA professional

2  basketball games through non-exempt channels of distribution.

3      100.    For the purpose of formulating and effectuating this contract, combination, and

4  conspiracy, the NBA, NBA Properties, and the NBA Teams and their co-conspirators have done,

5  among other things, the following:

6      (a) Agreed, conspired, and/or contracted to divide North America into exclusive

7      geographic territories for the sale of cable pay-per-view television broadcast rights to

8      regular season NBA games;

9      (b) Agreed, conspired, and/or contracted to restrict the output of the broadcasts of NBA

10      professional basketball games in non-exempt channels of distribution (such as cable pay-

11      per-view television);

12      (c) Agreed, conspired, and/or contracted to bundle and sell broadcast rights to purchasers

13      of cable television programming exclusively through a single, jointly developed product,

14      "NBA League Pass," at artificially inflated prices; and

15      (d) Contracted, conspired, and agreed to set the prices of the "NBA League Pass" at

16      artificially inflated and fixed levels.

17      101.    The aforementioned contract, combination, and conspiracy alleged in this cause of

18  action has had the following effects, among others:

19      (a) NBA television broadcast output has been restrained, suppressed, and restricted;

20      (b) Consumer prices have been raised, fixed, maintained, and stabilized at artificially high

21      and non-competitive levels;

22      (c) The output of live video broadcasts of NBA professional basketball games in non-

23      exempt channels of distribution has been restricted; and

24      (d) Plaintiffs and other purchasers of "NBA League Pass" have been deprived of the

25      benefit of free and open competition amongst the NBA Teams.

26      102.    As a direct and proximate result of Defendants' wrongful conduct, Plaintiff Cuff

27  and Plaintiff Classes B and B[1], and each of them, have been injured in an amount continuing and

28  presently undetermined. Each has purchased the "NBA League Pass" at artificially inflated prices.

- 25 -

Case No. 00CV1545L (BEN)

FIRST AMENDED CLASS ACTION COMPLAINT

343356.4

THORSNES BARTOLOTTA & McGUIRE
2550 FIFTH AVENUE ELEVENTH FLOOR
SAN DIEGO, CALIFORNIA 92103
(619) 236-9363  FAX (619) 236-9653

1   Each has suffered from the reduced output. Because these antitrust violations continue today and

2   are likely to continue in the future, Plaintiff Cuff and Plaintiff Classes B and B$^1$ suffer from an

3   immediate and significant threat of and actual injury from Defendants and their co-conspirators'

4   violation of the antitrust laws.

5           103.    Wherefore, Plaintiff Cuff on behalf of himself of on behalf of Plaintiff Classes B

6   and B$^1$ prays for judgment against Defendants, as set forth below.

7                                              **XI.**

8                              **FIFTH CAUSE OF ACTION**
                         **Violation of the Unfair Competition Act**
9       (On Behalf Plaintiffs Crayton, Miller, Cuff, The Beer Hunters and Classes A$^1$, B$^1$
                         and C$^1$ Against All Defendants)

10

11          104.    Plaintiffs reallege and incorporate by reference as if specifically set forth herein

12  Paragraphs 1 through 103 inclusive.

13          105.    Defendants have, in the course of their respective businesses, engaged in a

14  conspiracy to restrain trade as described above. This conduct is unfair, fraudulent, and/or unlawful

15  in violation of the Unfair Competition Act.

16          106.    The conduct described above offends established public policy and is immoral

17  and/or unethical. It also causes substantial injury to consumers. Consequently, Defendants have

18  engaged in and continue to engage in unfair business practices in violation of the Unfair

19  Competition Act.

20          107.    The conduct described above is contravened by the Sherman and Cartwright Acts

21  and Defendants have, therefore, engaged in an unlawful business practice in violation of the Unfair

22  Competition Act.

23          108.    Defendants' conduct, as described above, is likely to deceive the people of the State

24  of California and the general public and Defendants have, therefore, engaged in a fraudulent

25  business practice in violation of the Unfair Competition Act.

26          109.    Wherefore, Plaintiffs pray for judgment against Defendants, as set forth below.

27  ///

28  ///

                                              - 26 -

THORSNES BARTOLOTTA & McGUIRE
2550 FIFTH AVENUE ELEVENTH FLOOR
SAN DIEGO, CALIFORNIA 92103
(619) 236-9363 FAX (619) 236-9653

## XII.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs Crayton, Miller and Class A pray as follows:

1. That the Court adjudge, decree, and declare that in connection with their joint and exclusive sale of television rights through "NBA League Pass" Defendants and their co-conspirators have engaged in unlawful contract, combination, and conspiracy in violation of the Sherman Act;

2. That the Court enjoin the continuation of the unlawful contract, combination, and conspiracy;

3. That the Court grant certification of the class;

4. That Plaintiffs and members of the Class recover an award of compensatory and treble damages in favor of Plaintiffs and members of the Class with pre-judgment and post-judgment interest as provided by law;

5. That Plaintiffs recover their costs of this suit and reasonable attorneys' fees, as provided by law; and

6. That Plaintiffs and members of the Class be granted such other and further relief as the Court may deem just and proper under the circumstances.

**WHEREFORE**, Plaintiffs Crayton, Miller and Class A[1] pray as follows:

1. That the Court adjudge, decree, and declare that in connection with their joint and exclusive sale of satellite and cable television rights through "NBA League Pass" Defendants and their co-conspirators have engaged in unlawful contract, combination, and conspiracy in violation of the Cartwright Act;

2. That the Court enjoin the continuation of the unlawful contract, combination, and conspiracy;

3. That the Court order Defendants to pay to Plaintiffs and members of the Class and the general public, restitution, disgorgement, and be subject to such other relief as may be necessary to restore to any person in interest any money or property, real or personal, which may have been acquired by means the acts alleged herein, plus pre-judgment and post-judgment interest

- 27 -

THORSNES BARTOLOTTA & McGUIRE
2550 FIFTH AVENUE, ELEVENTH FLOOR
SAN DIEGO, CALIFORNIA 92103
(619) 236-9363 FAX (619) 236-9653

Case No. 00CV1545L (BEN)

FIRST AMENDED CLASS ACTION COMPLAINT

343356.4

1  where applicable and as provided by law;

2  4.    That Plaintiffs and members of the Class recover compensatory and  treble damages

3  pursuant to the Cartwright Act with pre-judgment and post-judgment interest as provided by law;

4  5.    That Plaintiffs  recover their costs of this suit and reasonable attorneys' fees, as

5  provided by law; and

6  6.    That Plaintiffs and members of the Class and the general public be granted such

7  other and further relief as the Court may deem just and proper under the circumstances.

8  **WHEREFORE**, Plaintiff Cuff and Class B pray as follows:

9  1.    That the Court adjudge, decree, and declare that in connection with their joint and

10  exclusive sale of satellite and cable television rights through "NBA League Pass" Defendants and

11  their agents and co-conspirators have engaged in unlawful contract, combination, and conspiracy

12  in violation of the Sherman Act;

13  2.    That the Court enjoin the continuation of the unlawful contract, combination, and

14  conspiracy;

15  3.    That the Court grant certification of the class;

16  4.    That Plaintiff and members of the Class recover an award of compensatory and

17  treble damages in favor of Plaintiff and members of the Class with pre-judgment and post-

18  judgment interest as provided by law;

19  5.    That Plaintiff recover his costs of this suit and reasonable attorneys' fees, as

20  provided by law; and

21  6.    That Plaintiff and members of the Class be granted such other and further relief as

22  the Court may deem just and proper under the circumstances.

23  **WHEREFORE**, Plaintiff Cuff and Class B[1] pray as follows:

24  1.    That the Court adjudge, decree, and declare that in connection with their joint and

25  exclusive sale of satellite and cable television rights through "NBA League Pass" Defendants and

26  their agents and co-conspirators have engaged in unlawful contract, combination, and conspiracy

27  in violation of the Cartwright Act;

28  2.    That the Court enjoin the continuation of the unlawful contract, combination, and

- 28 -

THORSNES BARTOLOTTA & McGUIRE
2550 FIFTH AVENUE  ELEVENTH FLOOR
SAN DIEGO, CALIFORNIA 92103
(619) 236-9363   FAX (619) 236-9653

Case No. 00CV1545L (BEN)

FIRST AMENDED CLASS ACTION COMPLAINT

343356.4

1  conspiracy;

2      3.      That the Court order Defendants to pay to Plaintiff and members of the Class and

3  the general public, restitution, disgorgement, and be subject to such other relief as may be

4  necessary to restore to any person in interest any money or property, real or personal, which may

5  have been acquired by means the acts alleged herein, plus pre-judgment and post-judgment interest

6  where applicable and as provided by law;

7      4.      That Plaintiff and members of the Class recover compensatory and  treble damages

8  pursuant to the Cartwright Act with pre-judgment and post-judgment interest as provided by law;

9      5.      That Plaintiff recover his costs of this suit and reasonable attorneys' fees as

10  provided by law; and

11      6.      That Plaintiff and members of the Class and the general public be granted such

12  other and further relief as the Court may deem just and proper under the circumstances.

13      **WHEREFORE**, Plaintiffs The Beer Hunters and Class C pray as follows:

14      1.      That the Court adjudge, decree, and declare that in connection with their joint and

15  exclusive sale of satellite and cable television rights through "NBA League Pass" Defendants and

16  their co-conspirators have engaged in unlawful contract, combination, and conspiracy in violation

17  of the Sherman Act;

18      2.      That the Court enjoin the continuation of the unlawful contract, combination, and

19  conspiracy;

20      3.      That the Court grant certification of the class;

21      4.      That Plaintiffs and members of the Class recover an award of compensatory and

22  treble damages in favor of Plaintiffs and members of the Class with pre-judgment and post-

23  judgment interest as provided by law;

24      5.      That Plaintiffs recover their costs of this suit and reasonable attorneys' fees, as

25  provided by law; and

26      6.      That Plaintiffs and members of the Class be granted such other and further relief as

27  the Court may deem just and proper under the circumstances.

28      **WHEREFORE**, Plaintiffs The Beer Hunters and Class C[1] pray as follows:

- 29 -

THORSNES BARTOLOTTA & McGUIRE
2550 FIFTH AVENUE  ELEVENTH FLOOR
SAN DIEGO, CALIFORNIA  92103
(619) 236-9363  FAX (619) 236-9653

Case No. 00CV1545L (BEN)

FIRST AMENDED CLASS ACTION COMPLAINT

343356.4

1    1.    That the Court adjudge, decree, and declare that in connection with their joint and

2  exclusive sale of satellite and cable television rights through "NBA League Pass" Defendants and

3  their co-conspirators have engaged in unlawful contract, combination, and conspiracy in violation

4  of the Cartwright Act;

5    2.    That the Court enjoin the continuation of the unlawful contract, combination, and

6  conspiracy;

7    3.    That the Court order Defendants to pay to Plaintiffs and members of the Class and

8  the general public restitution, disgorgement, and be subject to such other relief as may be

9  necessary to restore to any person in interest any money or property, real or personal, which may

10  have been acquired by means the acts alleged herein, plus pre-judgment and post-judgment interest

11  where applicable and as provided by law;

12    4.    That Plaintiffs and members of the Class recover compensatory and  treble damages

13  pursuant to the Cartwright Act with pre-judgment and post-judgment interest as provided by law;

14    5.    That Plaintiffs recover their costs of this suit and reasonable attorneys' fees as

15  provided by law; and

16    6.    That Plaintiffs and members of the Class and the general public be granted such

17  other and further relief as the Court may deem just and proper under the circumstances.

18  ///

19  ///

20  ///

21  ///

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

THORSNES BARTOLOTTA & McGUIRE
2550 FIFTH AVENUE ELEVENTH FLOOR
SAN DIEGO, CALIFORNIA 92103
(619) 236-9363  FAX (619) 236-9653

- 30 -

# XIII.

## **JURY TRIAL DEMANDED**

Plaintiffs, individually and on behalf of the members of the respective Classes, and on behalf of the general public, request a jury trial in this matter.

DATED:  July 16, 2001                      THORSNES BARTOLOTTA & McGUIRE

By: _____
          JOHN F. McGUIRE, JR.
          DARAL B. MAZZARELLA
          KAREN R. FROSTROM


GRAYSON, HOVENKAMP & PETROSKI, P.L.L.C.
MARK A. HOVENKAMP, ESQ.

JEFFREY R. VAUGHAN, ESQ. (Pro Hac Vice)
5231 Bellaire Boulevard
Bellaire, Texas   77401-3901
Telephone:  (713) 660-0491

OLDENETTEL & ASSOCIATES
JEFFERSON H. READ, ESQ. (Pro Hac Vice)
1360 Post Oak Blvd., Suite 2350
Houston, Texas  77055
Telephone:  (713) 622-9220

Attorneys for Plaintiffs

THORSNES BARTOLOTTA & McGUIRE
2550 FIFTH AVENUE  ELEVENTH FLOOR
SAN DIEGO, CALIFORNIA 92103
(619) 236-9363  FAX (619) 236-9653

- 31 -

Case No. 00CV1545L (BEN)

343356.4

1  <u>Kingray, et al. v. NBA, et al.</u>
   USDC, Southern District Court   Case No.: 00CV 1545-L ( BEN)

2
                        <u>PROOF OF SERVICE BY MAIL</u>
3

4  STATE OF CALIFORNIA    )
                          )
5  COUNTY OF SAN DIEGO    )

6        I am employed in the county of San Diego, State of California.  I am over the age of 18 and
   not party to the within action; my business address is 2550 Fifth Avenue, Suite 1100,  San Diego,
7  California 92103.

8        On July 16, 2001, I served the foregoing documents described as:

9                              <u>**CLASS ACTION**</u>
       **FIRST AMENDED COMPLAINT FOR VIOLATIONS OF THE SHERMAN ACT,**
10     **CLAYTON ACT, AND CALIFORNIA BUSINESS & PROFESSIONS CODE AND**
                        <u>**DEMAND FOR JURY TRIAL**</u>
11

12 on the parties in this action by mailing, postage prepaid, in a sealed envelope addressed as follows:

   Dale H. Oliver, Esq.                          Attorneys for Defendant DIRECTV, INC.
13 Jon D. Corey, Esq.
   Quinn Emanuel Urquhart Oliver & Hedges,
14 LLP
   865 South Figueroa Street, 10th Floor
15 Los Angeles, California  90017-2543
   213) 624-7707
16 213) 624-0643 (fax)

17 Gerald L. McMahon, Esq.
   Stephen J. Segreto, Esq.
18 Seltzer Caplan McMahon Vitek, A Law
   Corporation
19 2100 Symphony Towers
   750 B Street
20 San Diego, California  92101-88177
   619) 685-3003
21 619) 685-3100 (fax)

22

23

24

25

26

27

28

                                          Case No. 00CV 1545-L (BEN)

PROOF OF SERVICE BY MAIL
                                                              355731.1

THORSNES BARTOLOTTA & McGUIRE
2550 FIFTH AVENUE ELEVENTH FLOOR
SAN DIEGO, CALIFORNIA 92025
(619) 236-9363  FAX (619) 236-9653

THORSNES BARTOLOTTA & McGUIRE
2550 FIFTH AVENUE ELEVENTH FLOOR
SAN DIEGO, CALIFORNIA 92103
(619) 236-9363 FAX (619) 236-9653

1  | Douglas B. Adler, Esq.
   | Carl A. Roth, Esq.
2  | Skadden, Arps, Slate, Meagher & Flom LLP
   | 300 South Grand Avenue
3  | Los Angeles, California  90071
   | 213) 687-5000
4  | 213) 687-5600 (fax)

5  | Jeffrey A. Mishkin, Esq.
   | Skadden, Arps, Slate, Meagher & Flom LLP
6  | Four Times Square
   | New York, NY 10036-6522
7  | Telephone:     (212) 735-3000
   | Fax:           (212) 735-2000
8  |
9  | Richard W. Buchanan, Esq.
   | National Basketball Association
   | 645 Fifth Avenue
10 | New York, NY  10022
   | Telephone:     (212) 407-8000
11 | Fax:           (212) 832-3861

Counsel for Defendants National Basketball Association; NBA Properties, Inc.; Chicago Professional Sports Limited Partnership, incorrectly sued as CBLS Corporation; LAC Basketball Club, Inc.; Royal Kings Limited Partnership; The Los Angeles Lakers, Inc; Jazz Basketball Investors, Inc.; and Trail Blazers, Inc.

12 | Robert A. Sacks, Esq.
   | Brendan P. Cullen, Esq.
13 | Sullivan & Cromwell
   | 1888 Century Park East
14 | Los Angeles, CA 90067
   | Telephone:     (310) 712-6600
15 | Fax:           (310) 712-8800

Attorneys for Defendant Madison Square Garden, L.P., incorrectly sued as New York Knickerbockers, Inc.

16 | Yvonne S. Quinn, Esq.
   | Richard E. Constable, III, Esq.
17 | Sullivan & Cromwell
   | 125 Broad Street
18 | New York, New York  10004
   | Telephone:     (212) 558-4000
19 | Fax:           (212) 558-3588

20    I caused such envelope with **first class** postage thereon fully prepaid to be deposited in the U.S. Mail mailbox at San Diego, California on July 16, 2001.

21

22    I am "readily familiar" with firm's practice of collection and processing correspondence for mailing.  It is deposited with U.S. Postal Service on that same day in the ordinary course of business.  I am aware that on motion of party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

23

24    I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

25

26    Executed July 16, 2001, at San Diego, California.  I declare under penalty of perjury under the laws of the United States and the State of California, that the above is true and correct.

27

28

Shannon Pasek

- 2 -

Case No. 00CV 1545-L (BEN)

PROOF OF SERVICE BY MAIL

355731.1